(text box: 1) NO.  5-99-0194

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

________________________________________________________________________

ROBERT HURST, ) Appeal from the

) Circuit Court of

Plaintiff-Appellee and ) Madison County.  

Cross-Appellant, )

v. ) No. 96-L-103

)

CAPITAL CITIES MEDIA, INC., d/b/a )

Belleville News-Democrat, )

) Honorable

Defendant-Appellant and ) P. J. O'Neill, 

Cross-Appellee.   ) Judge, presiding.  

________________________________________________________________________

JUSTICE MAAG delivered the opinion of the court:  

This case comes to us pursuant to the application for leave to appeal, pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308), filed by the defendant, Capital Cities Media, Inc. (Capital Cities), doing business as the Belleville News-Democrat.  The circuit court of Madison County, Illinois, identified two questions of law on which it found a substantial ground for a difference of opinion, and the court determined that an immediate appeal might materially advance the ultimate termination of the litigation.

The issues identified by the trial court are as follows:

"Can the identification of plaintiff as a suspect in a criminal case in the newspaper articles at issue be innocently construed as substantially true so as to bar plaintiff's false[-]light privacy action where it also states, 
inter alia
, that the victim knew her attacker?"

"Does [section 13-217 of the Code of Civil Procedure (735 ILCS 5/13-217 (West 1994))] bar plaintiff's instant complaint on the basis that plaintiff had twice previously filed a substantially similar complaint, where one of the previous actions was 
nolle prossed
 [
sic
][] and the other was voluntarily dismissed on plaintiff's motion?" 

The facts pertinent to these questions are set forth as follows.  On February 9, 1996, Robert Hurst (plaintiff) filed suit against Capital Cities and others on a false-light invasion of privacy theory.  The cause of action was based upon an article published November 30, 1995, in the Belleville News-Democrat.  The article stated that a St. Louis television station had reported that plaintiff had been questioned for two hours by police in a recent rape case.  The article went on to state that the Illinois State Police in charge of the case refused to confirm or deny the television report and that the commander of the state police said that it would be inappropriate to comment.  The article also stated that plaintiff could not be reached for comment.

The article then recounted information that had been released to the public the preceding day by the Madison County State’s Attorney regarding the status of the investigation.  In a public statement, the Madison County State's Attorney said, "I think it has been established that she knew her attacker."  The State's Attorney stated that the victim initially "gave police a phony description of her attacker because she feared the real attacker would seek revenge if his identity were revealed."  The State's Attorney also said, "The public should know there is not a serial rapist out there."  The article went on to recount the State's Attorney's opinion that a rape had occurred and his explanation that the investigation, which was more than a month old, was continuing and was made more difficult because the police had experienced some difficulty working with the victim.  The alleged incident had received media attention prior to the November 30, 1995, article, as flyers reprinting a composite sketch created with the victim's assistance had been published in several local papers and broadcast locally.

At the time of this report, plaintiff was working at the St. Clair County sheriff's department as a part-time bailiff.  He had been the chief of police of the City of Belleville, Illinois, from 1985 through 1993.

Plaintiff initially filed a complaint in St. Clair County court on February 9, 1996, naming Viacom Broadcasting of Missouri, a corporation, doing business as KMOV-TV Channel 4, Capital Cities, George Pawlaczyk, Lori Nolen, and Greg Edwards as defendants.  The complaint against Capital Cities alleged theories of libel and invasion of privacy based on the November 30, 1995, article.  On February 13, 1996, plaintiff filed a motion to nol-pros the case on the ground that it was inadvertently filed in St. Clair County, Illinois.  The court granted the motion, and the case was dismissed that same day.

Plaintiff then filed a complaint in the circuit court of Madison County on February 13, 1996.  Therein, he named Viacom Broadcasting, Mary Phelan, Capital Cities, George Pawlaczyk, Lori Nolen, and Greg Edwards as defendants.  The counts against Capital Cities again contained allegations of libel and invasion of privacy arising from the November 30, 1995, article.  On April 3, 1996, plaintiff filed a motion to voluntarily dismiss Capital Cities and the other "newspaper defendants" from the lawsuit pursuant to section 2-1009 of the Code of Civil Procedure (735 ILCS 5/2-1009 (West 1994)).  The court granted the motion that same day.  Nolen and the television defendants remained in the case.

On November 27, 1996, plaintiff filed a motion to amend count I of the complaint to correct typographical errors and to add Capital Cities and other newspaper personnel as defendants.  The court granted the motion, and plaintiff filed his fourth amended complaint.  In the fourth amended complaint, plaintiff added a count (count IX) against Capital Cities and the other newspaper defendants.  This count alleged an invasion of privacy arising from the November 30, 1995, article.  Subsequently, plaintiff served Capital Cities with a summons and complaint.

On January 16, 1997, Capital Cities moved to dismiss the action filed against it, on the grounds that plaintiff had twice voluntarily dismissed claims against it and was prohibited from filing another action by the single-refiling rule.  The circuit court heard hours of argument and considered a number of briefs on this issue and on the issue of whether the article is actionable under a false-light claim.  Subsequently, the court certified those two questions for our consideration.

The first question we are asked to address is whether the identification of plaintiff as a suspect in a criminal case in the newspaper article at issue can be innocently construed as substantially true so as to bar plaintiff's false-light invasion of privacy action where the article also states, 
inter alia
, that the victim knew her attacker.  Stated simply, we are asked to decide whether the newspaper article is actionable on the basis of a false-light invasion of privacy claim.

In a false-light claim, the plaintiff must prove that he was placed in a false light before the public as a result of the defendant’s action, that the false light in which he was placed would be highly offensive to a reasonable person, and that the defendant acted with knowledge that the information he published was false or with reckless disregard for whether the information was true or false.  
Lovgren v. Citizens First National Bank of Princeton
, 126 Ill. 2d 411, 534 N.E.2d 987 (1989).  Absent some allegation as to what specific statement was false, a claim based on false-light invasion of privacy fails to satisfy a basic element of the cause of action.  
Kirchner v. Greene
, 294 Ill. App. 3d 672, 683, 691 N.E.2d 107, 116-17 (1998).

We first note that plaintiff has never set out the specific statement or section of the November 30, 1995, article that he found offensive, despite having filed an initial complaint and nine amended complaints against the newspaper.  On that basis alone, the circuit court could have dismissed the case against Capital Cities for plaintiff's failure to plead a basic element of the tort.  See 
Kirchner
, 294 Ill. App. 3d at 683, 691 N.E.2d at 116-17.  Based upon our review of the current
 amended complaint, it appears as though plaintiff is complaining that the newspaper published an article which stated that the victim had identified plaintiff as her attacker and accused him of abduction and rape when it had knowledge that this statement was false or had serious reasons to doubt the truthfulness of the statement.

The newspaper article at issue states that a local television station reported that plaintiff was questioned for two hours by the police in the case of a woman who claimed that she was abducted and raped.  The article also reported that a state police commander refused to confirm or deny the television report, stating that it would be inappropriate to comment.  Plaintiff is not referenced again in connection with any aspect of the case.  The article then proceeded to recap public statements made the preceding day by the Madison County State’s Attorney in regard to the status of the investigation.  The article noted that the State’s Attorney released information that the victim's account, in which she claimed she was attacked by a stranger, had been recanted.  The State's Attorney said, "I think it has been established that she knew her attacker."  In his public remarks, the State's Attorney indicated that he made this information public because he thought the citizens should know that the assault was not a random attack and that "there was not a serial rapist out there".

We have reviewed the contents of the article and find nothing therein that charges plaintiff with the commission of a crime.  See 
Trembois v. Standard Ry. Equipment Manufacturing Co.
, 337 Ill. App. 35, 43-44, 84 N.E.2d 862, 866 (1949); 
Adams v. Sussman & Hertzberg, Ltd.
, 292 Ill. App. 3d 30, 47, 684 N.E.2d 935, 947 (1997).  In the November 30 article, the newspaper did not identify plaintiff as a suspect.  It did not accuse plaintiff of committing a crime or impute to him the commission of a crime.  From our review of the article, the only portion that could arguably suggest criminal conduct is the report that the police interviewed plaintiff, and that would require a quantum leap of speculation and innuendo.  The article does not state that plaintiff was questioned as a suspect, nor does it imply a sinister motive to the interview.  Plaintiff does not claim that the report that he was interviewed by the police is false.

The article did not state that the victim had identified plaintiff as the perpetrator.  In fact, the article did not quote the victim directly or paraphrase any firsthand statement, true or false, made by the victim.  Rather, it recounts a public statement made by the Madison County State’s Attorney.  It was the State’s Attorney who attributed a statement to the victim.  According to the State's Attorney, the victim had recanted her initial statement that she was attacked by a stranger and stated instead that she knew the perpetrator.  The State's Attorney had released information about the status of the investigation a day or two before this article ran.

In our view, the report of information provided by the State's Attorney is subject to the fair-reporting privilege.  This privilege protects news accounts of written and verbal statements made by governmental agencies and officials acting in their official capacities.  
Gist v. Macon County Sheriff's Department
, 284 Ill. App. 3d 367, 375, 671 N.E.2d 1154, 1159 (1996).  "The publication of a defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgement of the occurrence reported."  Restatement (Second) of Torts §611, at 297 (1977).  This section of the second Restatement of Torts was adopted by the Illinois Supreme Court in 
Catalano v. Pechous
, 83 Ill. 2d 146, 419 N.E.2d 350 (1980).  Comment 
a
 following section 611 states that actual malice does not defeat this privilege.  Restatement (Second) of Torts §611, Comment 
a
, at 298 (1977).  Thus, the fact that the information being reported is false is not actionable.  
Tepper v. Copley Press, Inc., 
308 Ill. App. 3d  713, 718, 721 N.E.2d 669, 674-75 (1999).  The accuracy of the summary, not the truth or falsity of the information being summarized, is the benchmark of the privilege, because the one reporting on the proceeding or meeting is simply acting as the public eye, reporting information that could be accessed by any member of the public who was present for the press conference.  
Gist
, 284 Ill. App. 3d at 376, 671 N.E.2d at 1160 (citing Restatement (Second) of Torts §611, Comment 
i
, at 301 (1977)).

Plaintiff has not claimed that the newspaper's report of the public statement made by the State's Attorney was factually inaccurate, incomplete, or an unfair summary.  In the absence of any allegation and any proof that the article was an inaccurate report or an unfair abridgment of the public statements made by the State's Attorney, an elected governmental official whose office is responsible for reviewing criminal charges, we conclude that the fair-reporting privilege protects the defendant.  See 
Gist
, 284 Ill. App. 3d at 377, 671 N.E.2d at 1161; 
O'Donnell v. Field Enterprises, Inc.
, 145 Ill. App. 3d 1032, 1035-36, 491 N.E.2d 1212, 1216-17 (1986).  There is no evidence that the newspaper abandoned the fair-reporting privilege by going beyond the official's statement to draw conclusions or speculate on the implications of the information.  See
 Tunney v. American Broadcasting Co.
, 109 Ill. App. 3d 769, 773, 441 N.E.2d 86, 90-91 (1982).  The article contains a sufficiently fair and accurate summary of the public statements made by the State's Attorney.  
Tepper
, 308 Ill. App. 3d at 720, 721 N.E.2d at 675.

Stripped of innuendo and insinuation, the article cannot be reasonably interpreted to impute the commission of a crime to plaintiff.  See 
Grisanzio v. Rockford Newspapers, Inc
., 132 Ill. App. 3d 914, 920, 477 N.E.2d 805, 810 (1985); 
Harte v. Chicago Council of Lawyers
, 220 Ill. App. 3d 255, 262-63, 581 N.E.2d 275, 279-80 (1991).  We find nothing in the article that is actionable under the defamation and privacy laws of this state.  We express no opinion on whether any actions against any other defendants, including those who were previously dismissed and those who remain in the suit, are meritorious.  We have simply answered the certified question posed in this case.

We were also asked to decide whether section 13-217 of the Code of Civil Procedure (735 ILCS 5/13-217 (West 1994)) bars plaintiff's action against Capital Cities on the basis that plaintiff had twice previously filed a substantially similar complaint and plaintiff nol-prossed one of the previous actions and the other was voluntarily dismissed on plaintiff's motion.

Defendant argues that the third cause of action filed against Capital Cities is barred by the single-refiling rule announced in 
Flesner v. Youngs Development Co.
, 145 Ill. 2d 252,  582 N.E.2d 720 (1991).  Plaintiff argues that the motion to nol-pros the action filed in St. Clair County does not constitute a voluntary dismissal for purposes of the single-refiling rule, and plaintiff also asserts that the 1995 amendments to section 13-217 (735 ILCS 5/13-217 (West Supp. 1995)) legislatively overruled the 
Flesner 
decision.

We first address the effect of plaintiff's action to nol-pros the initial complaint filed in St. Clair County.

The effect of a 
nolle prosequi
 in civil cases was not accurately ascertained and defined until modern times.  See 
Davenport v. Newton
, 42 A. 1087 (1898).  In some jurisdictions, a 
nolle prosequi
 was considered a 
retraxit
, operating to discharge the action and as an absolute bar to another action for the same cause.  In others, a 
nolle prosequi
 was an agreement not to proceed either as to some of the defendants or as to some part of the suit.  
Davenport
, 42 A. at 1090 (citing 
Minor v. Mechanics' Bank
, 26 U.S. (1 Pet.) 46, 74 , 7 L. Ed. 47 (1828)).  

Black's Law Dictionary defines a 
nolle prosequi
 as "[a] formal entry upon the record, by the plaintiff in a civil suit[] or, more commonly, by the prosecuting officer in a criminal action, by which he declares that he 'will no further prosecute' the case, either as to some of the defendants[] or altogether".  Black's Law Dictionary 945 (5
th
 ed. 1979).  A 
nolle prosequi
 is not an acquittal but is a procedure, like a nonsuit or discontinuance in a civil suit, and it leaves the matter in the same condition in which it was before the commencement of the prosecution.  
People v. Watson
, 394 Ill. 177, 179, 68 N.E.2d 265, 266 (1946).  It is not a final disposition of a case and, if entered before jeopardy attaches, does not operate as an acquittal so as to prevent a subsequent prosecution for the same offense.  
Watson
, 394 Ill. at 179, 68 N.E.2d at 266.

In cases involving criminal proceedings, Illinois courts have recognized that a motion to nol-pros is comparable to a motion to dismiss.  See 
People v. Maher
, 77 Ill. App. 3d 488, 490, 396 N.E.2d 77, 79 (1979); 
People v. Verstat
, 112 Ill. App. 3d 90, 103, 444 N.E.2d 1374, 1384 (1983); 
People v. Daniels
, 187 Ill. 2d 301, 312, 718 N.E.2d 149, 157 (1999).

Although a motion for 
nolle prosequi
 is not a procedure strictly recognized in Illinois civil practice, it is clear to us that plaintiff's motion for 
nolle prosequi
 constitutes nothing more and nothing less than a motion filed by plaintiff to voluntarily dismiss his action without prejudice.  Therefore, it is a voluntary dismissal that comes within the confines of section 13-217 of the Code of Civil Procedure.

Based upon this record, we have concluded that plaintiff twice dismissed and twice refiled causes of action arising from the same newspaper article against Capital Cities.  Before we tackle the question of whether section 13-217 permits multiple refilings following voluntary dismissals of an action where the statute of limitations has not expired, we will first determine whether the pre-1995 version of section 13-217 (735 ILCS 5/13-217 (West 1994)) or the 1995 amended version (735 ILCS 5/13-217 (West Supp. 1995)) is applicable to the pending action.

Capital Cities has argued that plaintiff's third cause of action filed against it is barred by the single-refiling rule announced in 
Flesner v. Youngs Development Co.
, 145 Ill. 2d 252, 582 N.E.2d 720 (1991).  In 
Flesner, 
the Illinois Supreme Court held that section 13-217 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 13-217) expressly permitted a plaintiff only one opportunity to refile a claim after he has voluntarily dismissed his action, even if the applicable statute of limitations has not expired. 
 
Flesner
, 145 Ill. 2d at 254, 582 N.E.2d at 721.  Plaintiff has argued that the 1995 amendments to section 13-217 permit multiple refilings following voluntary dismissals, provided the action has been refiled within the applicable statute of limitations, and that the legislative amendments to section 13-217 were intended to overrule the 
Flesner 
decision. 

Section 13-217, as well as other provisions of the Civil Practice Law, was amended by an act commonly referenced as the Civil Justice Reform Amendments of 1995.  Pub. Act. 89-7, §15, eff. March 9, 1995 (1995 Ill. Laws 309).  On December 18, 1997, the Supreme Court declared Public Act 89-7 unconstitutional in its entirety.  
Best v. Taylor Machine Works
, 179 Ill. 2d 367, 689 N.E.2d 1057 (1997).  According to the record, plaintiff twice dismissed and twice refiled his action against Capital Cities during the 1996 calendar year.  The 
Best 
decision was handed down approximately one year after the pleadings were filed in this case.  Plaintiff argues that this 
Best
 decision should not be applied to his case because he relied in good faith on the validity of the 1995 version of section 13-217.  He also asserts that retroactive application would result in 
an injustice.

When a statute is held unconstitutional in its entirety, it is void 
ab initio.  Mills v. Peoples Gas Light & Coke Co.
, 327 Ill. 508, 535, 158 N.E. 814 (1927).  An unconstitutional law confers no right, imposes no duty, and affords no protection.  
Mills
, 327 Ill. at 535, 158 N.E. at 824.  It is as inoperative as though it had never been passed.  
Mills
, 327 Ill. at 535, 158 N.E. at 824; 
People v. Gersch
, 135 Ill. 2d 384, 399, 553 N.E.2d 281, 288 (1990).  "When a statute is adjudged to be unconstitutional, rights cannot be built up under it; contracts which depend upon it for their consideration are void; it constitutes a protection to no one who has acted under it, and no one can be punished for having refused obedience to it before the decision was made."  
Mills
, 327 Ill. at 535, 158 N.E. at 825.  "To hold that a judicial decision that declares a statute unconstitutional is not retroactive would forever prevent those injured under the unconstitutional legislative act from receiving a remedy for the deprivation of a guaranteed right.  This would clearly offend all sense of due process under both the Federal and State Constitutions."  
Gersch
, 135 Ill. 2d at 397-98, 553 N.E.2d at 287.  

The distinction between a judicial decision that changes established principles of common law by announcing a new rule, by overruling a precedent, or by deciding an issue of first impression and a judicial decision that declares a statute unconstitutional is key to understanding why courts are compelled to apply retroactively judicial decisions holding statutes unconstitutional.  
Gersch
, 135 Ill. 2d at 394-95, 553 N.E.2d at 286.  The duty to review and invalidate unconstitutional actions of the legislature is a paramount and constitutionally mandated function of the court system.  
Gersch
, 135 Ill. 2d at 398, 553 N.E.2d at 287.  "This duty *** is *** exhibited in the strong language of our precedents declaring the 
ab initio
 principle:  'When a statute is held unconstitutional in its entirety, it is void 
ab initio
.' "  
Gersch
, 135 Ill. 2d at 399, 553 N.E.2d at 288 (quoting 
People v. Manuel
, 94 Ill. 2d 242, 244-45, 446 N.E.2d 240, 241 (1983)).  Prospective application of an unconstitutional act would in essence mean that the act which was found unconstitutional was at one time constitutional.  This cannot be done.  See 
Grasso v. Kucharski
, 93 Ill. App. 2d 233, 237, 236 N.E.2d 262, 264 (1968).

Plaintiff argues that a retroactive application of the 
Best
 decision would result in 
injustice or hardship due to his justifiable reliance on the validity of the statute.  In 
Gersch
, the Illinois Supreme Court recognized that a number of courts have struggled with the potentially harsh results of the void 
ab initio
 doctrine, but the court declined to modify the doctrine, particularly in the area of criminal prosecutions.  
Gersch
, 135 Ill. 2d at 399-401, 553 N.E.2d at 288.  In 
Gersch
, the Illinois Supreme Court found no persuasive policy argument for departing from the void
 ab initio
 doctrine, and it gave us no indication that it is likely to depart from the application of this long-established principle in civil cases.

The 
ab initio
 rule has been followed even where its application produced a harsh result.  See 
Keslick v. Williams Oil-O-Matic Heating Corp.
, 360 Ill. 552, 196 N.E. 814 (1935) (widow's cause of action based upon violations of the Occupational Diseases Act, which was declared unconstitutional subsequent to the filing of the action, would not be reinstated despite the fact that it was initially dismissed upon an improper ground); 
Barnacki v. Crane Co.
, 284 Ill. App. 641, 2 N.E.2d 581 (1936) (abstract of opinion) (a judgment for the plaintiff in the employee's action brought pursuant to the Occupational Diseases Act, which was declared unconstitutional after the entry of the judgment, was nevertheless void); 
Quitman v. Chicago Transit Authority
, 348 Ill. App. 481, 482-83, 109 N.E.2d 373, 374 (1952) (the directed verdict in favor of the defendant, on the basis that the plaintiff's tort action against the employer was barred by a provision of the Workers' Compensation Act, was reversed when the Illinois Supreme Court declared said provision to be unconstitutional in an unrelated appeal while the plaintiff's appeal of the directed verdict was pending); 
Peterson v. Montegna & Co.
, 11 Ill. App. 2d 109, 136 N.E.2d 586 (1956).

Despite the potential for harsh results, the law is clear in this area.  A statute adjudged to be unconstitutional affords no protection to those who acted under it.  The effect of enacting an unconstitutional act is to leave the law in force as it was before the enactment of the unconstitutional act.  Therefore, the provisions of section 13-217 (735 ILCS 5/13-217 (West 1994)) (before the 1995 amendments) are applicable in the present action.  Accordingly, a plaintiff is permitted one, and only one, refiling of an action, even though the applicable statute of limitations has not expired.  See 
Flesner
, 145 Ill. 2d at 254, 582 N.E.2d at 721; 
Timberlake v. Illini Hospital
, 175 Ill. 2d 159, 164, 676 N.E.2d 634, 636-37 (1997).

Pursuant to the authority granted in Supreme Court Rule 366(a)(5) (155 Ill. 2d R. 366(a)(5)), we grant judgment in favor of defendant Capital Cities.  

In this case, plaintiff has filed a cross-appeal claiming that the trial court erred in dismissing one count and in granting summary judgment on two other counts of his twelfth amended complaint.  The trial court granted summary judgment in favor of the defendants on count I, which alleged that Capital Cities and Gary Berkley conspired to publish an article placing plaintiff in a false light, and count III, which alleged false-light invasion of privacy against Berkley.  The trial court also dismissed count IV, which alleged defamation against Capital Cities and Berkley.  All counts were based upon the November 30, 1995, article published in the Belleville News-Democrat.

We may affirm on any basis apparent in the record.  See 
Gunthrop v. Golan,
 184 Ill. 2d 432, 438, 704 N.E.2d 370, 373 (1998).  Earlier in this decision, we determined that nothing in the article was actionable under the privacy laws of this state.  Based upon our disposition in the direct appeal, we find that judgment was properly entered in favor of the defendants on counts III and IV.  Our decision is equally applicable to count I, which alleges conspiracy.  Conspiracy is not a separate and distinct tort in Illinois.  
Weber v. Cueto
, 253 Ill. App. 3d 509, 518, 624 N.E.2d 442, 449 (1993).  It is the act performed in pursuit of the agreement that may create liability.  
Weber
, 253 Ill. App. 3d at 518, 624 N.E.2d at 449.  There is no cause of action unless an overt, tortious, or unlawful act is done that, in absence of the conspiracy, would give rise to a claim for relief.  
Illinois Traffic Court Driver Improvement Educational Foundation v. Peoria Journal Star, Inc.
, 144 Ill. App. 3d 555, 562, 494 N.E.2d 939, 944 (1986).  Plaintiff's conspiracy count rises or falls on the false-light claim.  We have already determined that the false-light claim was not actionable.  Therefore, plaintiff's conspiracy claim also fails.  Judgment was properly entered for defendants on count I.  

Accordingly, the orders of the circuit court are affirmed.  Given our disposition, we need not address the remaining issues in plaintiff's cross-appeal.  

Certified questions answered; judgment entered; orders affirmed.  

HOPKINS and RARICK, JJ., concur.

NO. 5-99-0194

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________

ROBERT HURST, ) Appeal from the

) Circuit Court of

Plaintiff-Appellee and ) Madison County.  

Cross-Appellant, )

v. ) No. 96-L-103

)

CAPITAL CITIES MEDIA, INC., d/b/a )

Belleville News-Democrat, )

) Honorable

Defendant-Appellant and ) P. J. O'Neill, 

Cross-Appellee.   ) Judge, presiding.  

___________________________________________________________________________

Opinion Filed
: August 7, 2001

___________________________________________________________________________

Justices
: Honorable Gordon E. Maag, J.

Honorable Philip J. Rarick, J.

Honorable Terrence J. Hopkins, J.

Concur

___________________________________________________________________________

Attorneys
 Joseph E. Martineau, David B. Helms, Lewis, Rice & Fingersh, L.C.,

for
 500 North Broadway, Suite 2000, St. Louis, MO  63102

Appellant
 

___________________________________________________________________________

Attorneys
 Bruce N. Cook, Harriet H. Hamilton, Cook, Shevlin, Ysursa, Brauer &

for
 Bartholomew, Ltd., 12 West Lincoln Street, Belleville, IL  62220

Appellee
 

___________________________________________________________________________

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 08/07/01.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.