DEENA PERLSTEIN *et al.*, Plaintiffs-Appellants, v. MAURICE WOLK *et al.*,
Defendants-Appellees.

Second District No. 2—03—0003

Opinion filed May 21, 2004.—Rehearing denied June 24, 2004.

Thomas W. Gooch III and Christine A. Bedard, both of Law Offices of Thomas W. Gooch III, of Wauconda, for appellants.

Gino L. DiVito and Lisa A. Martin, both of Tabet DiVito & Rothstein, LLC, of Chicago, for appellees.

JUSTICE GILLERAN JOHNSON delivered the opinion of the court:

On January 8, 1998, the plaintiffs, Deena Perlstein and Scott Schneider, filed a complaint in the circuit court of Cook County against the defendants, Maurice Wolk and Ross & Hardies, alleging that the defendants had committed legal malpractice in the preparation of a will for Deena Perlstein's deceased husband, Larry Perlstein. The plaintiffs voluntarily dismissed the case on September 5, 2001, but subsequently refiled their complaint on April 10, 2002, in the circuit court of Lake County. The defendants filed a motion to dismiss the plaintiffs' complaint, alleging that it was not timely filed. On October 1, 2002, the circuit court of Lake County granted the defendants' motion to dismiss. The plaintiffs appeal from that order. We reverse and remand for additional proceedings.

Larry Perlstein's father, Harris Perlstein, established the Lawrence A. Perlstein Trust (the H.P. Trust) on July 27, 1971. The H.P. Trust provided that, during Larry Perlstein's life, the net income of the trust was to be distributed to Larry Perlstein and his descendants. The H.P. Trust also provided that upon Larry Perlstein's death, the trust property be divided into two parts, Part A and Part B. Part A, consisting of 40% of the trust property, was to be distributed to Larry's spouse and Larry's descendants in such manner "as Larry appoints and directs by Will specifically referring to this power of appointment." The H.P. Trust further provided that "[t]o the extent that Larry does not effectively exercise his power of appointment over any property comprising Part A, such property shall be added to Part B" of the trust property. Part B, consisting of 60% of the trust property, was to be equally divided among Larry's descendants.

Larry Perlstein died on September 23, 1995, leaving a will dated October 23, 1992, and a codicil dated May 12, 1993. Additionally, Larry Perlstein had executed a declaration of trust on January 5, 1988, establishing the L.A.P. Trust. The L.A.P. Trust was subsequently

amended and restated on May 17, 1991. The L.A.P. Trust was again amended and restated on July 20, 1994. The foregoing instruments were drafted by the defendant attorney, Maurice Wolk. In his will, Larry Perlstein elected to exercise the power of appointment granted to him in Part A of the H.P. Trust. In the exercise of that power, Larry Perlstein's will directed that all of the assets allocated to Part A of the H.P. Trust be distributed in accordance with the provisions of the L.A.P. Trust. In part, the L.A.P. Trust provided that if Larry Perlstein's wife, Deena Perlstein, survived him, then upon her death, the trustee shall distribute $300,000 to Scott Schneider, Deena Perlstein's son from a previous marriage.

Larry Perlstein's will was admitted to probate on October 16, 1995. On January 8, 1996, the attorneys for the trustees of the H.P. Trust rendered an opinion that the trustees should not fund the L.A.P. Trust because the power of appointment granted in the H.P. Trust was not properly exercised in Larry Perlstein's will. Specifically, the attorneys stated that the proposed gift to Schneider exceeded the scope of the power of appointment because the H.P. Trust limited the class of permissible appointees of the assets of the H.P. Trust to Larry Perlstein's surviving spouse and his descendants. Schneider was not in this class. Additionally, the attorneys noted that if the exercise of the power of appointment had granted Deena Perlstein the power to appoint assets from the trust to Schneider, instead of directing an outright distribution to Schneider, the exercise of the power of appointment would have been fully effective. The language of the H.P. Trust directed that if the power of appointment in Part A of the trust was not properly exercised, then Part A of the H.P. Trust should be added to Part B of the H.P. Trust. The H.P. Trust further directed that Part B be distributed only to Larry Perlstein's descendants, thus excluding Deena Perlstein. The plaintiffs learned of this problem with the funding of the L.A.P. Trust on January 26, 1996.

The plaintiffs originally filed their complaint against the defendants for legal malpractice in the circuit court of Cook County on January 8, 1998. The plaintiffs voluntarily dismissed that case on September 5, 2001, but subsequently refiled their complaint on April 10, 2002, in the circuit court of Lake County. We note that section 13—217 of the Code of Civil Procedure (the Code) (735 ILCS 5/13—217 (West 2002)) permits a plaintiff to refile an action, which has been previously voluntarily dismissed, within one year from the date of dismissal, whether or not the limitations period for bringing such an action has expired. *Picciotto v. RGB Riverboat*, 323 Ill. App. 3d 708, 709 (2001).

In their complaint, the plaintiffs alleged that the defendants had

committed malpractice in drafting Larry Perlstein's will because the power of appointment exercised in Larry Perlstein's will did not comply with the requirements of the H.P. Trust. This malpractice compromised the validity of the entire exercise of that power and the validity of the L.A.P. Trust. The complaint alleged that, because of the defendants' malpractice, Schneider had suffered a loss of $300,000. The complaint further alleged that, due to the malpractice, Deena Perlstein was forced to enter into an agreement with the descendants of Larry Perlstein to reform his will. The descendants of Larry Perlstein agreed on a reformation of the L.A.P. Trust that recognized partial validity of the exercise of the power of appointment in Larry Perlstein's will in exchange for certain concessions on the part of Deena Perlstein. Those concessions included relinquishment of (1) her position as trustee of the L.A.P. Trust; (2) certain insurance proceeds not involved in these proceedings; (3) a large amount of valuable personal property that she inherited; and (4) the ability to invade the principal of the trust. In addition to these losses, Deena Perlstein alleged that she had become responsible for her own attorney fees and had lost the use of the income from the L.A.P. Trust since Larry Perlstein's death.

On May 17, 2002, the defendants filed a motion to dismiss the plaintiffs' complaint pursuant to section 2—619(a)(5) of the Code (735 ILCS 5/2—619(a)(5) (West 2002)). The defendants acknowledged that the plaintiffs' Lake County action related back to the date of the original Cook County complaint, filed January 8, 1998. Nonetheless, the defendants argued that the plaintiffs' original complaint had not been timely filed because it had not been filed within six months of Larry Perlstein's will being admitted to probate, which was required by section 8—1(a) of the Probate Act of 1975 (Probate Act) (755 ILCS 5/8—1(a) (West 2002)), or within the time for claims to be filed under section 18—3 of the Probate Act (755 ILCS 5/18—3 (West 2002)). As such, the defendants alleged that the plaintiffs' original complaint was time-barred by section 13—214.3(d) of the Limitations Act. 735 ILCS 5/13—214.3(d) (West 1994).

On September 18, 2002, the plaintiffs filed an amended response to the defendants' motion to dismiss. In their response, the plaintiffs argued that section 13—214.3(d) of the Limitations Act (735 ILCS 5/13—214.3(d) (West 1994)) did not apply to their cause of action. The plaintiffs argued that Public Act 89—7, effective March 9, 1995, had repealed section 13—214.3(d) of the Limitations Act. Although the plaintiffs acknowledged that Public Act 89—7 had subsequently been held to be unconstitutional in *Best v. Taylor Machine Works*, 179 Ill. 2d 367 (1997), they argued that they had a reasonable period of time

after the decision in *Best* was issued to file their complaint. Because they filed their complaint within three weeks of the *Best* decision, the plaintiffs argued that they had filed it within a reasonable period. The plaintiffs therefore argued that it was improper to dismiss their complaint based on section 13—214.3(d) of the Limitations Act. 735 ILCS 5/13—214.3(d) (West 1994).

On October 1, 2002, the trial court granted the defendants' motion to dismiss. The trial court held that, despite the harsh result, the doctrine of void *ab initio* applied in this case. The trial court determined that pursuant to the doctrine of void *ab initio*, the result of the *Best* decision (*Best*, 179 Ill. 2d 367) was that section 13—214.3(d) should be treated as if it had always remained in effect. As such, the trial court dismissed the plaintiffs' complaint with prejudice pursuant to section 2—619(a)(5) of the Code (735 ILCS 5/2—619(a)(5) (West 2002)) as time-barred by section 13—214.3(d) of the Limitations Act (735 ILCS 5/13—214.3(d) (West 1994)). Following the denial of their motion to reconsider, the plaintiffs filed a timely notice of appeal.

■ On appeal, the plaintiffs argue that the trial court erred in granting the defendants' motion to dismiss their complaint as time-barred pursuant to section 2—619(a)(5) of the Code. 735 ILCS 5/2—619(a)(5) (West 2002). On an appeal from a trial court's involuntary dismissal of a complaint pursuant to section 2—619 of the Code (735 ILCS 5/2—619 (West 2002)), we must determine " 'whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law.' " *Doyle v. Holy Cross Hospital*, 186 Ill. 2d 104, 109-10 (1999), quoting *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17 (1993). Our review is *de novo*. *In re Estate of Mayfield*, 288 Ill. App. 3d 534, 542 (1997). If a motion to dismiss is filed upon any of the possible bases listed in section 2—619, the party opposing the motion can present "affidavits or other proof denying the facts alleged or establishing facts obviating the grounds of defect." 735 ILCS 5/2—619(c) (West 2002).

The plaintiffs first contend that because section 13—214.3(d) had recently been revived at the time they filed their complaint, they were entitled to a reasonable period of time following the change in the law to file their complaint. We agree. Section 13—214.3 of the Limitations Act first became effective in 1991 and it provided a two-year limitations period and a six-year repose period for all legal malpractice claims. 735 ILCS 5/13—214.3(b), (c) (West 2002). Section 13—214.3 further provided that when an injury does not occur until the death of the client and the client's will is admitted to probate, an action for malpractice "must be commenced within the time for filing claims

against the estate or a petition contesting the validity of the will of the deceased person, whichever is later, as provided in the Probate Act of 1975." 735 ILCS 5/13—214.3(d) (West 1994). We note that in the present case, the injury did not occur until the death of Larry Perlstein, the person for whom the defendants rendered professional services. Because Larry Perlstein's will was admitted to probate, section 13—214.3(d) of the Limitations Act applies to the plaintiffs' claim for legal malpractice. See *Poullette v. Silverstein*, 328 Ill. App. 3d 791, 796-97 (2002); *Witt v. Jones & Jones Law Offices, P.C.*, 269 Ill. App. 3d 540, 542-43 (1995).

In March 1995, section 13—214.3 of the Limitations Act was amended as part of Public Act 89—7, the tort reform legislation passed by the Illinois General Assembly. Public Act 89—7 eliminated section 13—214.3(d) from the Limitations Act. As such, the two-year limitations period and six-year repose period applied to all legal malpractice actions, even when the injury occurred on the death of the client and the client's will was admitted to probate. However, on December 18, 1997, the supreme court in *Best* declared the core provisions of Public Act 89—7 unconstitutional. *Best*, 179 Ill. 2d at 467. The elimination of section 13—214.3(d) from the Limitations Act was not one of the core provisions of Public Act 89—7. Nonetheless, the court deemed invalid the noncore provisions of Public Act 89—7, which were not directly challenged in that case, on the grounds that they were not severable from the core provisions. *Best*, 179 Ill. 2d at 471. Accordingly, the court held that Public Act 89—7 was unconstitutional in its entirety. *Best*, 179 Ill. 2d at 467.

When a statute is held to be unconstitutional in its entirety, it is void *ab initio. People v. Gersch*, 135 Ill. 2d 384, 390 (1990). In *Gersch*, the defendant asserted his right to waive a trial by jury. *Gersch*, 135 Ill. 2d at 387. However, the trial court denied the defendant's request for a bench trial when the State asserted its statutory right to a jury trial under section 115—1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1987, ch. 38, par. 115—1). *Gersch*, 135 Ill. 2d at 387-88. Section 115—1 had been amended in July 1987 and January 1988 to provide a list of offenses where a defendant could not waive a jury trial without the State's assent. *Gersch*, 135 Ill. 2d at 391. A jury trial was held and the defendant was found guilty of murder. *Gersch*, 135 Ill. 2d at 388. However, the supreme court later held the 1987 and 1988 amendments to section 115—1 to be unconstitutional. *People ex rel. Daley v. Joyce*, 126 Ill. 2d 209, 222 (1988). Consequently, the defendant appealed his conviction, arguing that he was denied his constitutional right to a bench trial. *Gersch*, 135 Ill. 2d at 389.

The *Gersch* court determined that the effect of enacting an

unconstitutional amendment to a statute is to leave the law in force as it was before the adoption of the amendment. *Gersch*, 135 Ill. 2d at 390. The *Gersch* court explained that to hold a judicial decision that declares a statute unconstitutional as not retroactive would forever prevent those injured under the unconstitutional statute from receiving a remedy for the deprivation of a guaranteed right. *Gersch*, 135 Ill. 2d at 397. Consequently, the *Gersch* court held that the version of section 115—1 that existed prior to July 1987 was revived. *Gersch*, 135 Ill. 2d at 391. The prior version did not require the State's assent for a defendant to waive a jury trial. *Gersch*, 135 Ill. 2d at 390. Therefore, the defendant's conviction was reversed and the cause was remanded for a new trial. *Gersch*, 135 Ill. 2d at 402.

In so ruling, the *Gersch* court recognized that a number of courts have struggled with the potentially harsh results of the void *ab initio* doctrine. *Gersch*, 135 Ill. 2d at 399-400. The void *ab initio* doctrine does not take into account that people may have relied on the unconstitutional act. *Gersch*, 135 Ill. 2d at 400. However, the *Gersch* court noted that scholars have found the void *ab initio* principle especially appropriate in the area of criminal prosecution and in cases involving criminal procedure. *Gersch*, 135 Ill. 2d at 400. Consequently, the *Gersch* court found no persuasive policy argument for departing from the void *ab initio* doctrine. *Gersch*, 135 Ill. 2d at 401.

However, in a special concurrence, one member of the *Gersch* court expressed that the application of the void *ab initio* principle must not be the inevitable consequence in every case. *Gersch*, 135 Ill. 2d at 406 (Miller, J., specially concurring). The special concurrence in *Gersch* stated that, rather than automatically conclude that all unconstitutional statutes must be deemed to have been void from their inception, the more appropriate course requires that a reviewing court determine in an individual case or category of cases the effect that should be accorded a subsequent declaration of statutory invalidity. *Gersch*, 135 Ill. 2d at 406 (Miller, J., specially concurring). Furthermore, discussing the significance of a declaration of statutory invalidity, the United States Supreme Court has stated:

"The courts below have proceeded on the theory that the Act of Congress, having been found to be unconstitutional, was not a law; that it was inoperative, conferring no rights and imposing no duties, and hence affording no basis for the challenged decree. [Citations.] It is quite clear, however, that such broad statements as to the effect of a determination of unconstitutionality must be taken with qualifications. The actual existence of a statute, prior to such a determination, is an operative fact and may have consequences

which cannot justly be ignored. The past cannot always be erased by a new judicial declaration. The effect of the subsequent ruling as to invalidity may have to be considered in various aspects ***." *Chicot County Drainage District v. Baxter State Bank*, 308 U.S. 371, 374, 84 L. Ed. 329, 332-33, 60 S. Ct. 317, 318-19 (1940).

In the present case, the appropriate course requires that the effect of the determination of unconstitutionality in *Best* be taken with qualifications. The *Gersch* court strictly applied the void *ab initio* doctrine because scholars had found the void *ab initio* principle especially appropriate in the area of criminal prosecution and in cases involving criminal procedure. *Gersch*, 135 Ill. 2d at 400. Furthermore, the *Gersch* court found no persuasive policy argument for departing from the void *ab initio* principle. *Gersch*, 135 Ill. 2d at 401. Here, however, unlike in *Gersch*, we are not dealing with a criminal prosecution. In addition, there is a persuasive policy argument for departing from the void *ab initio* principle under the circumstances present in this case.

•2 In Illinois, an amendment shortening a limitations period will not be retroactively applied so as to terminate a cause of action unless the party has had a reasonable period of time after the amendment's effective date in which to file an action. *Griffin v. Goldenhersch*, 323 Ill. App. 3d 398, 408 (2001), citing *Goodman v. Harbor Market, Ltd.*, 278 Ill. App. 3d 684, 694 (1995). This judicial rule of construction applies even in those instances in which the legislature has expressed an intent that the limitations period be applied retroactively. *Goodman*, 278 Ill. App. 3d at 692. Although this rule is stated in terms of statutes of limitations, our supreme court has applied it in cases involving statutes of repose. *Goodman*, 278 Ill. App. 3d at 692-93, citing *Moore v. Jackson Park Hospital*, 95 Ill. 2d 223, 237 (1983), and *Mega v. Holy Cross Hospital*, 111 Ill. 2d 416, 422 (1986). Section 13—214.3(d) of the Limitations Act acts as a statute of repose. *Poulette*, 328 Ill. App. 3d at 796.

The reasonable period of time in which a plaintiff may bring suit for injuries sustained before the effective date of a statute of repose can never, however, be more than the repose period itself. *Griffin*, 323 Ill. App. 3d at 408. The reasonable period is calculated from the effective date of the statute. *Griffin*, 323 Ill. App. 3d at 408; *Meyers v. Underwood*, 316 Ill. App. 3d 970, 984 (2000). Unlike with statutes of limitations, most courts apply the repose period as the reasonable period for filing after the statute of repose provision became effective. *Griffin*, 323 Ill. App. 3d at 408. However, although the reasonable period can never be more than the repose period itself, that does not necessarily mean that so long as the period does not exceed that limit,

it can be called reasonable. *Meyers*, 316 Ill. App. 3d at 984-85. There is no fixed rule for determining what constitutes a reasonable time; such a determination turns on the particular facts and circumstances presented to the court in each case. *Meyers*, 316 Ill. App. 3d at 991, citing *M.E.H. v. L.H.*, 177 Ill. 2d 207, 217 (1997).

■ In the present case, Larry Perlstein died on September 23, 1995. At that time, Public Act 89—7 was still in effect and the plaintiffs were afforded a two-year limitations period and a six-year repose period for all legal malpractice claims. As the plaintiffs discovered their injury on January 26, 1996, and the alleged malpractice occurred in the writing of Larry Perlstein's will dated October 23, 1992, the filing of the plaintiffs' complaint on January 8, 1998, fell within the two-year limitations period and the six-year repose period. However, on December 18, 1997, just before the plaintiffs filed their complaint, Public Act 89—7 was found unconstitutional and the law was changed to once again include the repose period of section 13—214.3(d). *Best*, 179 Ill. 2d at 467. The repose period of section 13—214.3(d) would have required the plaintiffs' complaint to be filed on or before April 26, 1996. Pursuant to section 13—214.3(d), April 26, 1996, is the later of the dates by which the plaintiffs could file: (1) a petition contesting the validity of the will, specifically, April 16, 1996; and (2) a claim against Larry Perlstein's estate, as set forth in the claim notice published pursuant to section 18—3 of the Probate Act, specifically, April 26, 1996. See 735 ILCS 5/13—214.3(d) (West 1994).

Consequently, if we strictly applied the void *ab initio* principle, the plaintiffs' cause of action would have been instantaneously barred on December 18, 1997. Where causes of action would otherwise be instantaneously barred by the statute of repose, courts have allowed plaintiffs to file causes of action within a reasonable period after the effective date of the act creating the repose period. *M.E.H. v. L.H.*, 177 Ill. 2d 207, 216-17 (1997); *Griffin*, 323 Ill. App. 3d at 408. We acknowledge that the reasonable period doctrine is normally applied when there is a new legislative enactment of a statute of repose or a statute of limitation. However, in the present case, section 13—214.3(d) was revived, not due to a legislative enactment, but due to a judicial decision.

Nonetheless, we believe that the reasonable period doctrine is applicable. A change in a statute of repose by either legislative enactment or judicial decision yields the same result. In either event, a change in the law occurs that can instantaneously deprive a plaintiff of the opportunity to bring her cause of action before the court. Such a result is fundamentally unfair. See *Moore*, 95 Ill. 2d at 231 (a state may not deprive a person of all existing remedies for the enforcement

of a right, which the state has no power to destroy, unless there is, or was, afforded to her some real opportunity to protect the right). Furthermore, when a statute is changed by judicial decision, as in the present case, the purpose behind the reasonable period doctrine is even better served because there is no forewarning of the change in the law. In contrast, before a statute is changed by legislative enactment, there is usually discussion concerning the change, the public is made aware that the law is going to change, and the change is given a future effective date. Thus, on equity grounds, it is even more essential to apply the reasonable period doctrine when a statute of repose is changed by judicial decision. See *Aleckson v. Village of Round Lake Park*, 176 Ill. 2d 82, 91 (1997) (all reviewing courts enjoy the power to exercise discretion in a just manner so as to do equity). Under the present circumstances, we find that the filing of the plaintiffs' complaint, just three weeks after the *Best* decision, was within a reasonable period of time after the effective date of the change in the law. Consequently, we hold that the plaintiffs' complaint is not time-barred by section 13—214.3(d) of the Limitations Act. 735 ILCS 5/13—214.3(d) (West 1994). As such, the trial court erred when it granted the defendant's motion to dismiss.

In so ruling, we find unpersuasive the defendants' reliance on *Hurst v. Capital Cities Media, Inc.*, 323 Ill. App. 3d 812 (2001). The *Hurst* case involved section 13—217 of the Code (735 ILCS 5/13—217 (West 2002)), which was also modified by Public Act 89—7. The original version of section 13—217 (735 ILCS 5/13—217 (West 1994)), in effect prior to Public Act 89—7, expressly permitted a plaintiff only one opportunity to refile a claim after he had voluntarily dismissed his action, even if the applicable limitations period had not expired. *Hurst*, 323 Ill. App. 3d at 820. Public Act 89—7 modified section 13—217 (735 ILCS 5/13—217 (West Supp. 1995)) to permit multiple refilings following a voluntary dismissal of an action where the limitations period had not expired. *Hurst*, 323 Ill. App. 3d at 820.

In *Hurst*, the plaintiff had twice dismissed and twice refiled his cause of action in 1996 for false light invasion of privacy. *Hurst*, 323 Ill. App. 3d at 819-20. Public Act 89—7 was found unconstitutional approximately one year after the pleadings were filed in the *Hurst* case. *Hurst*, 323 Ill. App. 3d at 820. The trial court certified, for appellate review, the question of whether the single-refiling rule applied to the case. *Hurst*, 323 Ill. App. 3d at 815. As such, four years after the *Best* decision, the reviewing court had to determine which version of section 13—217 should be applied to the case. *Hurst*, 323 Ill. App. 3d at 820. The plaintiff argued that the *Best* decision should not be applied to his case because he relied in good faith on the validity of the Public

Act 89—7 version of section 13—217. *Hurst*, 323 Ill. App. 3d at 820. However, citing the void *ab initio* doctrine and the *Gersch* case, the reviewing court held that, despite the harsh results, a statute adjudged to be unconstitutional affords no protection to those who acted under it. *Hurst*, 323 Ill. App. 3d at 821. Consequently, the reviewing court, applying the *Best* decision retroactively, held that the original version of section 13—217 applied to the plaintiff's complaint. *Hurst*, 323 Ill. App. 3d at 822. Under that version of the statute, the plaintiff was allowed only one refiling of an action even though the limitations period had not expired. *Hurst*, 323 Ill. App. 3d at 822. Accordingly, the plaintiff's cause of action was barred by the single-refiling rule. *Hurst*, 323 Ill. App. 3d at 822.

We find *Hurst* distinguishable from the present case. In *Hurst*, there was no persuasive policy reason for departing from the void *ab initio* doctrine. The plaintiff in that case had twice dismissed and twice refiled his cause of action. As such, despite the application of the void *ab initio* doctrine, the plaintiff was not deprived of the opportunity to protect or enforce his rights. In fact, the plaintiff was afforded two opportunities to enforce his rights prior to the change in the law. Conversely, in the instant case, if the void *ab initio* doctrine were applied, the plaintiffs would be deprived of even one opportunity to file their complaint. For the reasons discussed above, we find such a result inequitable based on the facts of the present case. As such, because the policy considerations here differ from those in *Hurst*, *Hurst* is inapplicable to the case at bar.

Finally, as this issue is dispositive of this appeal, we decline to address the plaintiffs' additional contentions on appeal.

For the reasons stated, the judgment of the circuit court of Lake County is reversed and this cause is remanded for additional proceedings.

Reversed and remanded.

O'MALLEY, P.J., and BOWMAN, J., concur.