ROBERT G. BOUGADIS, Plaintiff-Appellant, *v.* ALAN H. LANGEFELD *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 76-813

Opinion filed March 21, 1979.

Raymond P. Concannon, of Miller and Concannon, of Chicago, for appellant.

Jerald A. Kessler and William D. Maddux, Ltd., both of Chicago, for appellees.

Miss JUSTICE McGILLICUDDY delivered the opinion of the court:

Robert G. Bougadis brought suit against Alan H. Langefeld and his employer, the Walgreen Company, for slander. The Circuit Court of Cook County granted the defendants' motion for summary judgment and Bougadis now appeals. Two issues are presented on appeal: (1) whether the trial court erred in denying the plaintiff's motion to strike the defendants' motion for a summary judgment, and (2) whether the trial court erred in granting the defendants a summary judgment.

Bougadis commenced this action in September 1974. In his complaint, Bougadis alleged that he was defamed by the defendants and that his contract as building commissioner for the Village of Berkeley, Illinois, was not renewed as the result of the publication of the following statement allegedly made by Langefeld:

"[Bougadis] is attempting to extort and get money for Berkeley Little League by refusing to authorize building permits so that Walgreen's can continue with its remodelling and expansion of its warehouse, unless Walgreens donates money to Berkeley Little League."

The defendants answered and also moved for a summary judgment. In support of their motion, they submitted the affidavits of Langefeld, John S. Romberger and Foster Pottle and the deposition of Bougadis. The plaintiff moved to strike the defendants' motion for summary judgment. The trial court denied his motion. The plaintiff then answered and submitted to the court portions of the discovery depositions of Langefeld and Romberger and transcripts of "relevant excerpts" of statements by Langefeld, Romberger and Pottle.

Except as noted, the facts presented in these affidavits and other instruments are largely undisputed. In the fall of 1973 Langefeld was the director of construction for Walgreen. Romberger, also a Walgreen employee, was project manager of construction and was assigned by Langefeld to a project to enlarge the Walgreen warehouse which was located in the Village of Berkeley. Bougadis was the building commissioner for the village, having been appointed to this position by the president of the village, Foster Pottle; his term was to expire on May 1, 1974.

Walgreen filed for a building permit for the warehouse project in October 1973. Pursuant to this application, Walgreen entered into negotiations with officials of the village, including Bougadis, over the particulars of the construction plans and over the fee schedule. However, by the first week in April 1974, no permit had been issued. On April 4, 1974, Bougadis informed Romberger by telephone that on the following Saturday, Walgreen could pick up a temporary building permit, contingent upon the payment of $10,000 as a deposit on the final fee and the deposit of $5,000 cash bond. The final fee schedule had not yet been determined.

In his deposition, Romberger asserted that during the April 4 telephone conversation Bougadis stated that he was president of the Berkeley Little League. Bougadis further indicated that the league was in financial trouble and wondered if Walgreen would like to make a donation. Romberger then asked how large a donation was desired and Bougadis replied that the league had a deficiency of approximately $1,200 to $1,800. Romberger then proposed a figure of $50, but Bougadis said that he had in mind something more like $1,000. Romberger then said that he would have to obtain authorization for any such donation from his superiors. Bougadis, in his deposition, admitted that he initiated the discussion on the donation. However, he claimed that when Romberger inquired as to the size of the donation requested, he simply responded that while $1,000 was needed, any amount would be appreciated.

Romberger called Langefeld the following day and informed him of his conversation with Bougadis. Langefeld then called Pottle. In his affidavit and deposition, Langefeld stated that he related to Pottle the contents of Bougadis' conversation with Romberger and asked whether Walgreen was required to make a donation in order to secure a building permit for its warehouse extension. In his transcribed statement, Langefeld asserted that he informed Pottle of "the inferences that we * * * Walgreens * * * had drawn from this conversation," and indicated that he did so because he felt that disclosure of this information was necessary to "maintain a working relationship with the village." Pottle, in his transcribed statement, made the following observation on his conversation with Langefeld:

> "Well, Mr. Langefeld, was quite upset and apparently he felt Mr. Bougadis was trying to extort money from Walgreens, regardless of what the cause was, Mr. Langefeld said it sounded to him like extortion."

Pottle concluded the conversation by assuring Langefeld that the donation was unnecessary and that he would investigate the matter.

Pottle then called Bougadis. Bougadis agreed that he discussed the donation with Walgreen but claimed that Walgreen volunteered to make

a $1,000 contribution. Pottle later found that Bougadis also prepared and signed a letter as building commissioner soliciting money for the little league. Pottle did not reappoint Bougadis as building commissioner when his term expired.

The first issue raised by Bougadis is whether the trial court improperly denied his motion to strike the defendants' motion for summary judgment. The plaintiff's motion was based upon alleged insufficiencies in the affidavits supporting the defendants' motion. In particular, he contended that the affidavits were narrative in form and contained conclusions and statements not admissible in evidence.

■■ Supreme Court Rule 191(a) (Ill. Rev. Stat., 1977, ch. 110A, par. 191(a)) governs the sufficiency of affidavits offered in support of a motion for summary judgment and provides, in pertinent part, that:

> "Affidavits in support of and in opposition to a motion for summary judgment under section 57 of the Civil Practice Act * * * shall be made on the personal knowledge of the affiants; * * * shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto."

The affidavit is to be viewed as a substitute for testimony taken in open court. (*Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 272 N.E.2d 497, *cert. denied* (1972), 408 U.S. 943, 33 L. Ed. 2d 766, 92 S. Ct. 2847.) Measured against this standard, we find no significant deficiencies in the affidavits offered by the defendants in this case. The affidavits contained assertions which were within the personal knowledge of the respective affiants. The statements were not conclusions, but were facts of the type which would be admissible in evidence. Moreover, an affidavit does not violate Rule 191 because the statements are in narrative form. We, therefore, conclude that the trial court did not err in denying Bougadis' motion to strike.

Bougadis also argues that the defendants were not entitled to a summary judgment. Summary judgment is proper where from the pleadings, depositions, admissions on file together with any affidavits and exhibits, it is evident that there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1977, ch. 110, par. 57(3); *Laflin v. Estate of Mills* (1977), 53 Ill. App. 3d 29, 368 N.E.2d 522.) In making this determination the court is required to construe the pleadings, depositions and affidavits on file most strongly against the movant. *Stanfield v. Medalist Industries, Inc.*, (1975), 34 Ill. App. 3d 635, 340 N.E.2d 276; *Mollihan v. Stephany* (1975), 35 Ill. App. 3d 101, 340 N.E.2d 627.

■■ ■ A defamation action may not be maintained in Illinois for a statement which is susceptible to a nondefamatory interpretation. The

supreme court, in *John v. Tribune Co.* (1962), 24 Ill. 2d 437, 181 N.E.2d 105, *cert. denied* (1962), 371 U.S. 877, 9 L. Ed. 2d 114, 83 S. Ct. 148, discussed this "innocent construction rule":

> "* * * That rule holds that the article is to be read as a whole and the words given their natural and obvious meaning, and requires that words allegedly libelous that are capable of being read innocently must be so read and declared nonactionable as a matter of law."

Although *John* involved a libel action, the supreme court has indicated that the rule is equally applicable to actions for slander. *Valentine v. North American Co.* (1974), 60 Ill. 2d 168, 328 N.E.2d 265.

From the pleadings, affidavits, depositions and statements on file there exists some question as to the precise language which Langefeld used in his discussion with Pottle. In his complaint, Bougadis claimed that Langefeld accused Bougadis of "attempting to extort and get money" for the little league. The defendants claim that while Langefeld disclosed to Pottle the Bougadis conversation on the need for donations, Langefeld never used the term "extort." In the affidavits and statements submitted to the trial court, the only document which supports the plaintiff's contention is the transcribed excerpts of the statement of Pottle suggesting that Langefeld said that Bougadis' comments "sounded to him like extortion." We find, however, that we need not decide whether the existence of this question of the precise language renders a summary judgment improper for, even assuming arguendo that Langefeld did use the term "like extortion," we believe his comments are susceptible of an innocent construction.

The plaintiff contends that Langefeld's statement constituted slander per se in that Langefeld accused Bougadis of either committing a crime or of being unfit for his professional duties. However, the material submitted by both the plaintiff and the defendants clearly demonstrates that Langefeld called Pottle to seek clarification of the situation. In disclosing the conversation, Langefeld may have indicated that extortion could be inferred from Bougadis' comments. Within this context, Langefeld did not use the term to accuse Bougadis of committing a crime or of being unfit for his professional duties; rather he used the term to describe the substance of the conversation. We find that Langefeld's statement can be construed innocently. Therefore, we hold that the trial court properly granted the defendants a summary judgment.

For the foregoing reasons, we affirm the judgment of the Circuit Court of Cook County.

Affirmed.

SIMON, P. J., and JIGANTI, J., concur.