WILLIAM J. TUNNEY, Plaintiff-Appellant, *v.* AMERICAN BROADCASTING COMPANY *et al.*, Defendants-Appellees.—(Jacqueline Hedges *et al.*, Defendants.)

First District (5th Division)   No. 81—892

Opinion filed September 17, 1982.—Rehearing denied November 10, 1982.

Barrett & Sramek, of Palos Heights, for appellant.

Reuben & Proctor, of Chicago (Lawrence Gunnels, Samuel Fifer, and Mark Sableman, of counsel), for appellees.

JUSTICE MEJDA delivered the opinion of the court:

Plaintiff brought suit for damages for alleged libel and slander based on a television news story broadcast by American Broadcasting Company and WLS TV. The court granted ABC's motion for summary judgment. Plaintiff appeals.

The issue on appeal is whether the granting of summary judgment was proper.

Plaintiff filed a two-count complaint for libel and slander. Count I was directed against American Broadcasting Company and WLS TV, its subsidiary (hereinafter referred to collectively as ABC). Count II was directed against four individual defendants who were subsequently dismissed as a result of plaintiff's voluntary nonsuit. Only count I is involved in this appeal. Count I alleged in pertinent part that on June 5, 1975, ABC and its subsidiary WLS through their employee, Robert Petty, broadcast a report containing a false statement about plaintiff. The broadcast is set forth in its entirety below, with the words plaintiff claims as libelous italicized:

> "Village inspectors are checking a long list of complaints being made by eleven homeowners in this relatively new subdivision. Cracked concrete and sidewalks is one of the most common complaints against the builder, William J. Tunney, who says such occurrences are not his fault, but an Act of God. *But sinking driveways, leaking roofs and similar complaints are obviously the result of poor construction.*
>
> This house cost its owner more than $40,000, as all of these houses in this area cost. According to inspectors, the entire house, which is less than one year old, needs tuckpointing.
>
> William J. Tunney would not consent to be interviewed on TV but we did talk for 10 to 15 minutes or so. But he told me that he has been in the homebuilding business for more than 25 years. He says that he has built more than 60 homes in this particular section of Dolton, and he says of all those homes so far, only 10 or 12 people are complaining and he says that all of those complaints will be satisfied, given time. Bob Petty, Channel 7."

The complaint further alleged that plaintiff was the owner of a construction company and that by this broadcast defendants inferred that plaintiff built shoddy homes. ABC denied in substance the allegations of count I.

ABC filed a motion for summary judgment, asserting in pertinent part that the language contained in the broadcast was nonactionable under the Illinois rule of innocent construction; that the challenged language was fair comment on matters of public interest; and that the language was protected under the privilege of neutral reporting pursuant to the first and fourteenth amendments to the United States Constitution and article I, section 4 of the Illinois Constitution.

In support of the motion ABC submitted the affidavits of Robert Petty, describing his investigation of the story; that of Robert O. Shackleton, a village of Dolton building inspector, attesting to the truth of a letter he sent to the Dolton Building Commissioner articulating his inspection of complaints received concerning homes built by Tunney Construction Co.; and that of LaVerne S. Cothroll, village clerk of the village of Dolton, certifying the correctness of attached minutes of the village of Dolton board meetings held on June 3 and June 10, 1975. The minutes noted that a letter and petition from 11 Dolton residents were presented to the clerk of the village of Dolton requesting a moratorium on construction in Dolton by William Tunney Construction Co.

Plaintiff filed a counteraffidavit and a "Response to Motion for Summary Judgment."

After considering the memoranda of counsel, oral argument, tendered exhibits and depositions, the court granted ABC's motion for summary judgment.

OPINION

■■ Plaintiff contends that ABC's motion for summary judgment should not have been granted because Petty's affidavit was replete with hearsay statements inadmissible at trial and thus insufficient to support the motion. An affidavit in support of a motion for summary judgment is to be viewed as a substitute for testimony taken in open court. (*Bougadis v. Langefeld* (1979), 69 Ill. App. 3d 1010, 387 N.E.2d 965.) Based upon this standard we find no significant deficiencies in Petty's affidavit. A review of Petty's affidavit shows that it is in narrative form and relates the manner by which he received his assignment and investigated the story eventually publicized. While Petty did relate in his affidavit a number of comments made by unidentified inspectors and homeowners, the context of the affidavit shows that the testimony was offered not for the truth of the matters asserted therein but rather to show the manner in which Petty investigated his story and the reasonableness of the conclusions he drew in his broadcast statements. As such the statements were not hearsay. (See *Peo-*

*ple v. Carpenter* (1963), 28 Ill. 2d 116, 190 N.E.2d 738.) Nor did the narrative style of the affidavit render it insufficient. (*Bougadis*.) Therefore, we find plaintiff's challenge to the sufficiency of Petty's affidavit without merit.

Plaintiff next contends that summary judgment was improper because here a question of fact remained as to the cause of the sinking driveways and leaking roofs described in ABC's broadcast.

Summary judgment will be granted if the pleadings, depositions, admissions, exhibits and affidavits on file reveal that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Carruthers v. B.C. Christopher & Co.* (1974), 57 Ill. 2d 376, 313 N.E.2d 457.

The broadcast stated that "sinking driveways, leaking roofs and similar complaints are obviously the result of poor construction." The report of Inspector Robert Shackleton submitted to the Dolton Building Commissioner and presented in support of ABC's motion indicated that the driveway of one homeowner, John Tomzak, was broken by contractor's equipment and that the 3" driveway had been poured with 2 x 4 forms contrary to the provisions of the Dolton building code. The report also cited at least one complaint of a leaking roof and several other water leaks in various rooms of at least four homes built by Tunney. The report indicated that it had inspected these complaints "of work not finished or repairs to be made under warantee [*sic*]," found most of them valid, and recommended that the situations be rectified. Wesley Lane, a village trustee of Dolton, and its building commissioner testified in his deposition that the homeowners' complaints including roof damage and the concrete work of driveways were basically in his opinion the result of shoddy workmanship. Lane also testified, however, that he was primarily a tax accountant and had never engaged in construction work. Petty's affidavit stated that during his inspection of the Dolton subdivision on June 5, 1975, he observed several defects such as cracked driveways, sinking sidewalks and leaking roofs, and that he met with two village of Dolton building inspectors and followed them around during their inspection and heard them call the work on the homes "shoddy."

In contrast to this testimony Tunney's counteraffidavit stated that he knew of two homes with cracked driveways. According to Tunney, John Tomzak, the owner of one home whose driveway had been described in Inspector Shackleton's report, had driven a heavy moving truck across the corner of the driveway causing it to crack. Tunney stated that the crack in the driveway of the home owned by Jacqueline and Ralph Hedges was caused by the repeated parking of a

semi-tractor and trailer owned by Ralph Hedges on the driveway. Tunney also stated that he knew of no roof which leaked as a result of poor construction, but that he did know of one home which had suffered roof damage from a wind storm.

We conclude, therefore, that Tunney's affidavit raises an issue of fact as to whether the sinking driveways and leaky roofs were caused by poor construction or other factors.

■ ABC does not dispute the sufficiency of Tunney's affidavit. Rather it responds that the broadcast statements are nonactionable because "substantially true," relying on *Kilbane v. Sabonjian* (1976), 38 Ill. App. 3d 172, 347 N.E.2d 757, and *Mitchell v. Peoria Journal-Star, Inc.* (1966), 76 Ill. App. 2d 154, 221 N.E.2d 516. Both cases emphasize that to establish truth as a defense to a defamation action, it is not necessary to establish the literal truth of inoffensive details; rather, a showing of the truth of the gist or sting of defamatory imputation is sufficient. (*Kilbane v. Sabonjian* (1976), 38 Ill. App. 3d 172, 175; *Mitchell v. Peoria Journal-Star, Inc.* (1966), 76 Ill. App. 2d 154, 162.) In *Kilbane*, one of the plaintiffs had alleged that defendant's statements were untrue and intended to mean that plaintiff had used public office for private gain. Plaintiff argued that defendant's statements were untrue because the allegedly defamatory remark stated plaintiff had initiated a suit to recover a "finder's fee" when in fact the suit had been to recover plaintiff's share in a joint venture. The court held that this was an inoffensive detail which was immaterial to determining the truth of the defamatory statement. In *Mitchell* the alleged libelous publication stated that the plaintiffs were arrested in the "Men's Social Club" when in fact they had been arrested at the "Shelly Tap." The court held that this inaccuracy did not make the report libelous where there was no allegation that the use of the words "Men's Social Club" connoted some libelous meaning. We believe, however, these cases are distinguishable from the case at bar. The allegedly libelous statement here "sinking driveways, leaking roofs and similar complaints are obviously the result of poor construction" is not an inoffensive detail of the broadcast report but goes to the heart of the matter in question and is the "gist" or "sting" of the report. As such, we cannot say that this statement is nonactionable as a matter of law because the report was substantially true.

Assuming arguendo the untruth of this statement, ABC further argues the broadcast is privileged as a report of official government action, relying on *Lulay v. Peoria Journal-Star, Inc.* (1966), 34 Ill. 2d 112, 214 N.E.2d 746. That case dealt with a statement made in a government report rather than a statement made at a meeting of a gov-

ernmental body (see discussion of *Lulay* in *Catalano v. Pechous* (1980), 83 Ill. 2d 146, 167, 419 N.E.2d 350, 360), but the court, following section 611 of the Restatement of Torts (1938) stated that a privilege to report government proceedings existed. (34 Ill. 2d 112, 115, 214 N.E.2d 746, 747.) Under section 611 as it then read the right to report the activities of a " 'municipal corporation or of a body empowered by law to perform a public duty is privileged, although it contains matter which is false and defamatory, if it is (a) accurate and complete or a fair abridgment of such proceedings, and (b) not made solely for the purpose of causing harm to the person defamed.' " (34 Ill. 2d 112, 115, 214 N.E.2d 746, 748.) However, as the later case of *Catalano v. Pechous* points out, section 611 of the Restatement (Second) of Torts (1977) now reads:

"Sec. 611. Report of Official Proceeding or Public Meeting
The publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgment of the occurrence reported."

The qualified privilege recognized in *Lulay*, however, still retains its validity. See, *e.g., Catalano; Nagib v. News-Sun* (1978), 64 Ill. App. 3d 752, 381 N.E.2d 1014.

As previously noted this privilege was extended in *Lulay* to a statement made in a government report based on an investigation of city health officers. We see no reason to distinguish between the report noting the results of an official government investigation and the investigatory process itself. Therefore, we conclude that the privilege enunciated in *Lulay* is applicable to the investigatory process of the building inspectors in this case. This privilege extends to a report of governmental proceedings even though it may repeat matters first expressed in the proceedings which, in fact, are false and defamatory. (*Nagib v. News-Sun.*) The privilege is lost, however, if the report of the proceedings is inaccurate or made with actual malice. *Catalano.*

Having determined that this privilege is applicable here, we must now determine if Petty's allegedly libelous statement was an accurate report of the comments of the building inspectors. If the broadcast statement carried a "greater sting" in terms of libelous impact than did their statements, it cannot be considered a fair and accurate summary. See *Newell v. Field Enterprises, Inc.* (1980), 91 Ill. App. 3d 735, 415 N.E.2d 434.

Petty's affidavit and deposition do not establish that the inspectors in question specifically told him that sinking driveways, leaking

roofs and similar complaints "were the result of poor construction." The affidavit stated that he followed two village of Dolton building inspectors as they inspected the homes in the Dolton subdivision. Both inspectors noted numerous defects and attributed the defects to poor construction work. In a later formal interview with Petty, one of the inspectors told him that his inspections had confirmed *most* of the complaints of defects that the homeowners had earlier made to the village of Dolton Board of Trustees. The affidavit also stated that Petty had prepared his news story based on his interviews with homeowners, Tunney, and one building inspector, and his observation of the building inspectors during their investigation.

In his deposition Petty stated that the inspectors had called the work done on the houses "shoddy" but that he could not recall if he talked with the building inspectors about leaky roofs. He further stated, however, that he did not know why driveways sink and that the judgment that sinking driveways were caused by faulty construction was not his opinion; that *most* of the conclusions he came to in the story were based on talking with building inspectors and listening to them while conducting their inspection. Petty talked to no other village officials regarding this story.

■ Thus, Petty's affidavit and deposition established only that the inspectors made general references to plaintiff's "shoddy" work. We think this is significant because many of the homeowners' complaints as itemized in Inspector Shackleton's report concerned very minor defects such as missing screws, broken electrical outlets and/or loose towel racks. A determination of poor construction based on these kinds of defects would not have the gist or sting of a determination of poor construction based on leaking roofs and sinking driveways. Therefore, Petty's affidavit and deposition are too general to establish the accuracy of the allegedly libelous broadcast statement, and a question of fact remains on that issue making summary judgment improper on the basis of this qualified privilege.

■ ABC further argues that it was not at fault in preparation of this broadcast. Both parties agree that the standard to be applied here was expressed in *Troman v. Wood* (1975), 62 Ill. 2d 184, 198, 340 N.E.2d 292, 299:

> "*** in a suit brought by a private individual to recover actual damages for a defamatory publication whose substantial danger to reputation is apparent, recovery may be had upon proof that the publication was false, and that the defendant either knew it to be false, or, believing it to be true, lacked reasonable grounds for that belief. We hold further that negligence may

form the basis of liability regardless of whether or not the publication ·in question related to a matter of public or general interest."

"Reasonable grounds" in this context is generally a question of fact. (See *Troman v. Wood* (1975), 62 Ill. 2d 184, 196-97; *Newell v. Field Enterprises, Inc.* (1980), 91 Ill. App. 3d 735, 755-56, 415 N.E.2d 434, 450.) Petty's deposition indicates that he never inspected the leaking roofs in question, nor did he know what caused sinking driveways. Based on the affidavits and deposition in this case we think reasonable minds could differ as to the reasonableness of Petty's conclusion that the sinking driveways and leaking roofs here were caused by poor construction.

Because discussed by plaintiff on appeal, we finally address two grounds for summary judgment urged by ABC at trial but not reasserted by ABC before this court: the rule of innocent construction and the privilege of "neutral reportage."

■ The rule of innocent construction requires that a publication be read as a whole, that words be given their natural and obvious meaning, and that words allegedly libelous that are capable of being read innocently must be so read and declared nonactionable as a matter of law. (*Fried v. Jacobson* (1982), 107 Ill. App. 3d 780; *John v. Tribune Co.* (1962), 24 Ill. 2d 437, 181 N.E.2d 105.) The broadcast in question here stated that village inspectors were checking a long list of complaints from homeowners in a relatively new subdivision of Dolton against the builder, William J. Tunney; that Tunney had been in the homebuilding business for more than 25 years and had built more than 60 homes in this section of Dolton; that cracked concrete and sidewalks were some of the most common complaints against Tunney, who said such occurrences were not his fault, but an act of God, but that sinking driveways, leaking roofs and similar complaints are obviously the result of poor construction. In the context of this broadcast the words "[b]ut sinking driveways, leaking roofs and similar complaints are obviously the result of poor construction," cannot be given an innocent construction. Given their natural and obvious meaning, they impute to Tunney a lack of ability in his business and trade and are thus libelous *per se*. *Makis v. Area Publications Corp.* (1979), 77 Ill. App. 3d 452, 395 N.E.2d 1185.

Nor do we find the privilege of "neutral reportage" adopted in *Krauss v. Champaign News Gazette, Inc.* (1978), 59 Ill. App. 3d 745, 375 N.E.2d 1362, of assistance to ABC here, as this court in *Newell v. Field Enterprises, Inc.* (1980), 91 Ill. App. 3d 735, 757, 415 N.E.2d 434, 452, expressly declined to adopt this privilege recognized in

778

*Krauss.* We find no reason to retreat from our holding in *Newell.*

For the reasons cited herein, the order granting defendant ABC's motion for summary judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

SULLIVAN, P. J., and WILSON, J., concur.