SOLAIA TECHNOLOGY, LLC, *et al.*, Plaintiffs-Appellants, v. SPECIALTY PUBLISHING COMPANY *et al.*, Defendants-Appellees (John Doè, Defendant).

First District (2nd Division)    No. 1—03—3089

Opinion filed March 31, 2005.

2

CAHILL, J., specially concurring.

Niro, Scavone, Haller & Niro, of Chicago (Paul K. Vickrey, of counsel), for appellants.

Schiff Hardin, L.L.P., of Chicago (Frederick J. Sperling, Sondra A. Hemeryck, and Anne H. Burkett, of counsel), for appellees.

PRESIDING JUSTICE BURKE delivered the opinion of the court:
Plaintiffs Solaia Technology, LLC (Solaia), the law firm of Niro, Scavone, Haller, & Niro, Ltd., and Raymond Niro (collectively plaintiffs) appeal from an order of the circuit court dismissing with prejudice their claims of defamation *per se* and tortious interference with prospective economic advantage against defendants Specialty Publishing Company, Peggy Smedley, John Buell and John Doe. On

appeal, plaintiffs contend that the trial court erred (1) in dismissing their claim for defamation pursuant to section 2—615 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2—615 (West 2002)) and section 2—619(a)(9) of the Code (735 ILCS 5/2—619(a)(9) (West 2002)) because the statements made by defendants fell within the category of statements recognized as defamatory *per se*, defendants cannot claim the fair report privilege and, alternatively, plaintiffs' allegations of malice defeated any claim of the fair report privilege and (2) in dismissing their claim for tortious interference with prospective economic advantage pursuant to section 2—615 of the Code because plaintiffs adequately pleaded the elements of their claim. For the reasons set forth below, we affirm in part, reverse in part, and remand the cause for further proceedings.

## STATEMENT OF FACTS

Solaia owns United States Patent No. 5,038,318 (the '318 patent) and its sole business involves the licensing and enforcement of its patent. The '318 patent "relates to a system for communicating real-time data between a programmable logic controller (PLC) and a program operating in a central controller." According to plaintiffs, the '318 patent's technology has "broad application in the manufacturing industry and is used by virtually every manufacturing company that uses a network of PLCs and a computer for control of a manufacturing operation."

On January 21, 2003, plaintiffs filed a complaint against Specialty Publishing Company, a corporation that publishes Start Magazine (Start); Smedley, the editorial director of Start; Buell, an editor of Start; and John Doe, an author of a letter published in Start. Plaintiffs alleged that certain statements published in various articles of Start defamed plaintiffs *per se*, constituted tortious interference with prospective economic advantage and, with respect to Raymond Niro, constituted a false light invasion of privacy. One article upon which the complaint was based was printed in Start's April 2002 issue. The article, entitled "Chaos in Manufacturing," first explained that the "OPC Foundation" was founded by a group of companies that, in 1996, developed and released a common standard interface for communication between process control devices used in manufacturing. The article also noted that this standard became very successful and was adopted by hundreds of products. The article further stated:

> "Clearly, on the surface, the goal of this group was to enable the staunchest of competitors to play nice in the sandbox and develop an elusive open [*i.e.*, nonproprietary] standard. In the end, an open standard would mean less expense for vendors and more solutions for users.

Thus, came the birth of what is known as the OPC Foundation today. It all seemed so perfect. \*\*\* Sharing data and information that was once was proprietary. Innocent enough. And it was, in the beginning.

\*\*\* [L]ast year, \*\*\* a lawsuit was filed against world-class manufacturers, BMW, Jefferson Smurfit, Clorox, and Konica. \*\*\*

Solaia \*\*\* filed the lawsuit alleging that all three end user manufacturers are violating a patent that it purchased from Schneider Electric's Automation Business [(Schneider)]. Schneider sold the rights to its patent to Solaia \*\*\*. Now Solaia, aided by the legal firm of Niro, Scavone, Haller & Niro, Chicago, Illinois is on a legal campaign targeting manufacturers who might be infringing on its patent.

But that's not all. \*\*\* [T]hree end user companies filed counter lawsuits against their supplier, Rockwell Automation [(Rockwell)]. The suits claim that Rockwell will not indemnify them for use of the technology that Rockwell sold them.

\* \* \*

The manufacturing mob is baying for blood, and many companies blame Schneider. In fact, just about everyone Start spoke with either on or off the record within the manufacturing community is furious over Schneider's initial actions. Their anger is only being fanned by Solaia's lawsuits against leading manufacturers.

\* \* \*

\*\*\* Schneider allegedly did not publicly reveal that it had a patent. And what seems to be in dispute today is why Schneider did not reveal it had a patent on technology that might be incorporated in the OPC standard?

\* \* \*

Attorneys from Niro, Scavone, Haller & Niro reiterate that they are just following the law and that its clients should not be punished for taking advantage of the rules.

\* \* \*

It seems that new patents are issued monthly, if not weekly, granting more and more patents. Some argue that the U.S. Patent And [sic] Trademark Office is not supposed to issue patents on ideas, however, many contend that is what it is doing with software patents. The end result is having a chilling effect on the software industry as more and more companies file lawsuits to defend these so-called patents.

\* \* \*

Watergate spawned campaign-finance reform, perhaps the Solaia lawsuits will spawn patent reform."

The January 2003 issue also contained an article entitled "Conspiracy of a Shakedown." The article stated:

"Rockwell, Milwaukee, Wis., turned the tables on Solaia Technology, Chicago, Ill., Schneider Automation, North Andover, Mass., and attorney Raymond Niro, Niro, Scavone, Haller & Niro, Chicago, Ill., filing a lawsuit charging the aforementioned with unfair business practices.

On Dec. 10, 2002, Rockwell filed a lawsuit *** claiming that Solaia, Schneider, and Niro's law firm have conspired in violation of antitrust laws to 'shakedown' Rockwell's customers with baseless patent infringement claims.

\* \* \*

*** [Rockwell's suit alleges that], as part of the plan to injure Rockwell and disrupt competition, the 'conspirators' have made, 'baseless threats and allegations against manufacturing entities that those manufacturers are infringing the ['318 patent] by, among other things, using Rockwell-Allen-Bradley products; have overstated in a reckless and misleading fashion the scope, applicability and importance of the '318 patent to suppliers and users of industrial automation equipment in general; and have instituted repetitive, baseless, sham patent infringement litigation against those manufacturers.'

\* \* \*

Rockwell filed its complaint under the federal antitrust laws: the Sherman Antitrust Act, the Clayton Act, and Lanham Act.

*The Sherman Antitrust Act outlaws all contracts, combinations, and conspiracies that unreasonably restrain interstate and foreign trade. \*\*\* The Sherman Act also makes it a crime to monopolize or conspire with any other person or persons to monopolize any part of trade or commerce."* (Emphasis added.)

On February 20, 2003, defendants Specialty Publishing Company, Smedley and Buell (hereinafter collectively defendants) filed a combined motion to dismiss plaintiffs' complaint pursuant to section 2—619.1 of the Code (735 ILCS 5/2—619.1 (West 2002)), arguing that all claims in the complaint should be dismissed pursuant to section 2—615 of the Code (735 ILCS 5/2—615 (West 2002)) for failure to state a cause of action and that "portion[s] of plaintiffs' complaint" should be dismissed pursuant to section 2—619(a)(9) of the Code (735 ILCS 5/2—619(a)(9) (West 2002)) because the title "Conspiracy of a Shakedown," even if actionable, was subject to the fair report privilege.

On May 21, the trial court dismissed plaintiffs' tortious interference claim and false light invasion of privacy claim pursuant to sec-

tion 2—615 of the Code for failure to state a cause of action.[1] The trial court also dismissed plaintiffs' defamation *per se* count, finding that the alleged statements did not support claims for defamation *per se* because each of the statements was either susceptible of innocent construction, protected as expressions of opinion and/or "a fair abridgment of the litigation." Plaintiffs filed a motion for reconsideration and for leave to file an amended complaint. On May 29, the trial court denied plaintiffs' motion for reconsideration, but granted the motion for leave to file an amended complaint with respect to the claim of tortious interference with prospective economic advantage.

Plaintiffs subsequently filed an amended complaint containing claims for defamation, false light invasion of privacy and tortious interference with prospective economic advantage. On July 10, defendants filed a motion to dismiss the amended complaint, arguing that the defamation and false light invasion of privacy claims had merely been repleaded without changes and that those counts should be dismissed with prejudice. Defendants also argued that the tortious interference claim should be dismissed for failure to state a cause of action. On October 2, the trial court dismissed plaintiffs' amended complaint with prejudice.

This appeal followed.

## ANALYSIS

With respect to the title "Conspiracy of a Shakedown," we first briefly note that, contrary to the statement in the special concurrence to this opinion that we have not addressed plaintiffs' argument that the title is "defamatory on its face," defendants do not argue in their brief before this court that this statement is not defamatory and conceded, during oral argument before this court, that they are not so arguing on appeal. Instead, defendants maintain only that the statement, contrary to plaintiffs' argument, is protected by the fair report privilege because the title "Conspiracy of a Shakedown" is a fair and accurate summary of the complaint filed in the Rockwell lawsuit and that plaintiffs' allegations of malice do not defeat the privilege.

In the trial court, defendants moved to dismiss plaintiffs' defamation count with respect to the statement pursuant to section 2—619 of the Code,[2] arguing that they were protected by the fair report privilege. Dismissal pursuant to section 2—619(a)(9) is proper if "the claim as-

---

[1]In its dismissal, the trial court did not state whether these claims were dismissed with or without prejudice.

[2]We note that it is unclear from the trial court's memorandum and order whether the court dismissed this statement under section 2—615 or 2—619 of the Code: the trial court stated that the remark was a "fair abridgment of the

serted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2—619(a)(9) (West 2000). Thus, the movant, while admitting to the legal sufficiency of the complaint, asserts that an affirmative defense or other matter avoids or defeats the claim. *Tepper v. Copley Press, Inc.*, 308 Ill. App. 3d 713, 716, 721 N.E.2d 669 (1999). "Affirmative matter must be supported by affidavit, unless apparent on the face of the pleading attacked [citation], and, in ruling on the motion, the trial court must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party." *Borowiec v. Gateway 2000, Inc.*, 209 Ill. 2d 376, 383, 808 N.E.2d 957 (2004). This court reviews a trial court's decision to grant a section 2—619 motion to dismiss *de novo*. *Borowiec*, 209 Ill. 2d at 383; *Tepper*, 308 Ill. App. 3d at 717. The question of whether a publication is privileged under the fair report privilege is generally a question of law, particularly where there is no dispute about the content of the document on which the publication is based. 50 Am. Jur. 2d *Libel & Slander* § 316, at 626 (1995).

## Origins of the Fair Report Privilege

Illinois has adopted a common law privilege to report on judicial proceedings, which is commonly referred to as the fair report privilege. See, *e.g.*, *Harrison v. Chicago Sun-Times, Inc.*, 341 Ill. App. 3d 555, 572 (2003) (defining the fair report privilege as protecting the media from defamation actions when it reports information gathered from governmental proceedings). This privilege was originally embodied in section 611 of the Restatement of Torts. *Lulay v. Peoria Journal-Star, Inc.*, 34 Ill. 2d 112, 115, 214 N.E.2d 746 (1966); *Tepper*, 308 Ill. App. 3d at 718; Restatement of Torts § 611 (1938). Section 611 of the Restatement of Torts states that a publication reporting on judicial and government proceedings is privileged so long as the publication (1) is accurate and complete or a fair abridgment of the proceedings, and (2) "not made solely for the purpose of causing harm to the person defamed." Restatement of Torts § 611, at 293 (1938). The basis for this privilege is the public's interest in having information made available to it as to what occurs in official proceedings. See Restatement (Second) of Torts § 611, Comment *a*, at 297 (1977). This privilege is a qualified privilege (53 C.J.S. *Libel & Slander* § 99, at 175 (1987)) and is commonly exercised by newspapers, broadcasting stations, and oth-

---

litigation," implying that the remark was to be dismissed pursuant to section 2—619, but also stated that the remark could be "innocently construed when taken in context and read in its entirety," which implies that plaintiffs failed to state a cause of action and that the remark should have been dismissed pursuant to section 2—615.

ers in the business of reporting news to the public. Restatement (Second) of Torts § 611, Comment *c*, at 299 (1977). In 1966, our supreme court, relying on the language set forth in section 611 of the Restatement of Torts, held that "[t]he privilege to report governmental acts or utterances [is] defeated by proving that a particular publication was motivated solely by actual malice." *Lulay*, 34 Ill. 2d at 115.

In 1977, the Restatement (Second) of Torts was published and contained no requirement that the publication be "not made solely for the purpose of causing harm to the person defamed" in order for the publication to be privileged. Restatement (Second) of Torts § 611, at 297 (1977). Section 611 of the Restatement (Second) of Torts states:

> "The publication of defamatory matter concerning another in a report of an official action or proceeding *** is privileged if the report is accurate and complete or a fair abridgement of the occurrence reported." Restatement (Second) of Torts § 611, at 297 (1977).

Comment *a* to the Restatement (Second) of Torts states that an "[a]buse of the privilege takes place, therefore, when the publisher does not give a fair and accurate report of the proceeding." Restatement (Second) of Torts § 611, Comment *a*, at 298 (1977). Comment *b* to the Restatement (Second) of Torts states:

> "The privilege stated in this Section permits a person to publish a report of an official action or proceeding *** even though the report contains what he knows to be a false and defamatory statement. The constitutional requirement of fault is met in this situation by a showing of fault in failing to do what is reasonably necessary to insure that the report is accurate and complete or a fair abridgement." Restatement (Second) of Torts § 611, Comment *b*, at 298 (1977).

In the instant case, as stated above, defendants do not argue that the statement is not defamatory but, rather, contend that the statement is protected by the fair report privilege. Thus, we must determine whether defendants can avail themselves of the privilege, *i.e.*, whether the statement is accurate and a fair abridgment of the proceedings. The Rockwell complaint contains express allegations that there was a "shakedown scheme" on behalf of Solaia and its law firm of Niro, Scavone, Haller, & Niro, Ltd., and that Solaia and its law firm engaged in a "campaign of baseless and repetitive threats *** and suits *** in an apparent effort *** to 'shakedown' manufacturers through threats of potential business interruption or catastrophic damages." Moreover, the Rockwell complaint contains the word "conspiracy," or a form thereof, over 30 times when referring to Solaia and its law firm. We therefore find the statement accurate.

Plaintiffs contend, however, as is echoed by the special concurrence, that the title is not a fair abridgment of the occurrence. Comment *f* to section 611 of the Restatement (Second) of Torts, cited both by plaintiffs and in the special concurrence, states:

> "Not only must the report be accurate, but it must be fair. \*\*\* [A]lthough it is unnecessary that the report be exhaustive and complete, it is necessary that nothing be omitted or misplaced in such a manner as to convey an erroneous impression to those who hear or read it, as for example \*\*\* the use of a defamatory headline in a newspaper report, qualification of which is found only in the text of the article." Restatement (Second) of Torts § 611, Comment *f*, at 300-01 (1977).

See also Restatement of Torts § 611 Comment *d*, at 295 (1938). According to the special concurrence:

> "There is nothing in the text of the headline that would leave the reader with an impression that the underlying article reports on a complaint alleging unfair business practices and conspiracy. Without reference to the official proceeding, the reader is left with only one conclusion: plaintiffs entered into an illegal conspiracy." 356 Ill. App. 3d at 16.

Plaintiffs, in support of their argument, give as an example an article reporting an indictment of "Jones" for the murder of "Doe," in which, instead of having a headline entitled "Jones Indicted," the article's headline read "Jones a Murderer" or "Jones Murdered Doe," and liken this example to the headline at issue here. However, we find the argument in the special concurrence and plaintiffs' example readily distinguishable from the headline in the instant case.

■ Here, the headline does not read "Solaia and Law Firm Engaged in Conspiracy of a Shakedown" or "Solaia and Law Firm Conspiring to Shakedown Industry," the qualification of which could only be found in the article below. Rather, the title reads *only* "Conspiracy of a Shakedown," and the reader cannot in any way assume, *from the title of the article*, that Solaia or its law firm was engaged in any such activity. In fact, readers could not determine, from the headline alone, who was engaged in a "Conspiracy of a Shakedown."[3] Thus, contrary to the statement in the special concurrence that "the reader is left with only one conclusion [that] plaintiffs entered into an illegal conspiracy" (356 Ill. App. 3d at 16) there is nothing misplaced or omitted in the headline of the article that would convey the impression that Solaia or its law firm engaged in a

---

[3]Moreover, before readers learned, by reading the article, that Solaia and its law firm were engaged in any such activity, they would know that such activity was merely alleged in a complaint filed by Rockwell.

"Conspiracy of a Shakedown" to those who read it, and, accordingly, we find that the headline was a fair abridgment of the proceedings. Because the title here is an accurate and fair abridgement of the Rockwell complaint, the remaining issue to be decided in this case is whether Illinois law still allows allegations of actual malice to defeat any claim of protection by the fair report privilege.

### Application of Section 611 to the Case at Bar

■ Before addressing the issue of whether Illinois law still allows allegations of actual malice to defeat the fair report privilege, we briefly note that plaintiffs argue that the privilege set forth in "[s]ection 611 of the Restatement,[4] by its own terms, does not apply" to the allegedly defamatory title "Conspiracy of a Shakedown" because a comment to the Restatement states that "[t]he publication *** of the contents of preliminary pleadings *such as a complaint* *** before any judicial action has been taken *** is not within the [privilege] stated in this Section." (Emphasis added.) Restatement of Torts § 611, Comment *c*, at 294-95 (1938); Restatement (Second) of Torts § 611, Comment *e*, at 300 (1977). We note that comment *e* of the Restatement (Second) of Torts states that the purpose of the above comment is to prevent schemes in which a person files a complaint solely for the purpose of establishing a privilege to publish its content and then immediately drops the action. Restatement (Second) of Torts § 611, Comment *e*, at 300 (1977).

In *Newell v. Field Enterprises, Inc.*, 91 Ill. App. 3d 735, 415 N.E.2d 434 (1980), this court addressed the issue of whether the fair report privilege should attach only after some form of judicial action has taken place. *Newell*, 91 Ill. App. 3d at 745. The *Newell* court chose to join the trend adopting "the minority view, [that] the common law privilege to report on judicial proceedings attaches not at the point of judicial action, but rather *when the complaint is filed*." (Emphasis added.) *Newell*, 91 Ill. App. 3d at 746. The *Newell* court gave several reasons for its adoption of the minority view. First, the public's interest in knowing what is transpiring in the judicial system compelled that the entire judicial system be exposed to the light of public scrutiny. *Newell*, 91 Ill. App. 3d at 746. Second, the reasoning set forth by the states adopting the majority view, that such a limitation on the privilege reduces the potential for defamation, was unconvincing

---

[4]It is unclear from plaintiffs' argument whether plaintiffs are referring to the Restatement of Torts or the Restatement (Second) of Torts. However, because both Restatements contain the comment relied upon by plaintiffs in support of their argument, it is unnecessary to distinguish between the Restatements for purposes of this specific issue.

because, *inter alia*, the mere fact that "a suit has proceeded to the point where judicial action of some kind has taken place does not necessarily mean that the suit is less likely to be groundless and brought in bad faith." *Newell*, 91 Ill. App. 3d at 747. Third, today's society is aware of the one-sidedness of a complaint and can evaluate the actual worth of the information contained therein. *Newell*, 91 Ill. App. 3d at 747-48. Fourth, a pleading filed in a legal proceeding is a public record and should be open to the public's inspection at all times. *Newell*, 91 Ill. App. 3d at 748. Thus, based on the *Newell* court's decision, we find that the fair report privilege set forth in section 611 attaches at the point when the complaint is filed and, accordingly, also find that the privilege is applicable to the allegedly defamatory title "Conspiracy of a Shakedown" in the instant case.

### Catalano

Since the Restatement (Second) of Torts was published, only one Illinois Supreme Court decision, *Catalano v. Pechous*, 83 Ill. 2d 146, 419 N.E.2d 350 (1980), has addressed the issue of whether Illinois law still allows malice to defeat the privilege to report on judicial proceedings, or the fair report privilege, as set forth in section 611. In *Catalano*, seven aldermen on the city council brought actions for defamation against the city clerk, a newspaper reporter and a publisher after an allegedly defamatory statement made by the clerk about the aldermen at the city council meeting was repeated several months later to the reporter, who quoted the defamatory statement in a published article. *Catalano*, 83 Ill. 2d at 149. Counts I and II of the plaintiffs' complaint alleged that the statements by the city clerk were made falsely and maliciously. *Catalano*, 83 Ill. 2d at 151. Count III alleged that the statement was reported by the reporter and publisher with knowledge of its falsity and with reckless disregard as to its truth or falsity. *Catalano*, 83 Ill. 2d at 152. Each of the defendants filed motions for summary judgment, and each of the plaintiffs filed cross-motions for summary judgment. *Catalano*, 83 Ill. 2d at 149. The trial court ultimately granted each of the defendants' motions. *Catalano*, 83 Ill. 2d at 149. On appeal, the appellate court reversed the trial court's grant of summary judgment in favor of the clerk, but affirmed its grant of summary judgment in favor of the reporter and publisher. *Catalano v. Pechous*, 69 Ill. App. 3d 797, 812, 387 N.E.2d 714 (1978). Our supreme court granted the petitions for leave to appeal filed by the clerk and the plaintiffs. *Catalano*, 83 Ill. 2d at 150.

On appeal to the supreme court, the clerk argued that the plaintiffs, as public officials, had not proven that his statements concerning them were made with actual malice as required by *New*

*York Times Co. v. Sullivan*, 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710 (1964).[5] The *Catalano* court only briefly covered the "*New York Times* line of cases" and found that the plaintiff had proven that the clerk had acted with malice when issuing the defamatory statement. *Catalano*, 83 Ill. 2d at 165-66.

The *Catalano* court next considered the claims against the reporter and publisher, stating:

> "With respect to [the reporter and publisher defendants] there remain for consideration two questions not already disposed of. The first of these is whether the newspaper article involved was privileged as a report of governmental proceedings ***.
>
> The defendants rely principally on [*Lulay*]. [*Lulay*] ***, following section 611 of the Restatement of Torts, (1938), stated that a privilege to report government proceedings existed. [Citation.]
>
> Under section 611, as it then read, the privilege was defeasible if the statement was made with malice, in the common law sense of the term. When *Lulay* was decided that limitation had of course been rendered obsolete by *New York Times Co. v. Sullivan*. Section 611 of the Restatement (Second) of Torts (1977) now reads [as set forth above].
>
> Comment *a* to the section states that the privilege is lost if the report is not accurate, but the plaintiffs raise no question on that score. They do point out, however, that [the reporter] did not attend the council meeting, that the article was not published until five months later, that its report of the meeting was based on the account given by [the clerk], and that not all of the statements by [the clerk] which appear in the article were made at the meeting. These points raise questions not addressed in *Lulay*. We need not decide them, however, for we hold that actual malice on the part of these defendants has not been shown." *Catalano*, 83 Ill. 2d at 167-68.

The *Catalano* court then affirmed the grant of summary judgment in favor of the reporter and publisher. *Catalano*, 83 Ill. 2d at 170.

Since the *Catalano* decision, our appellate courts have struggled to determine whether, under Illinois law, actual malice still defeats the fair report privilege. See *Brown & Williamson Tobacco Corp. v. Jacobson*, 713 F.2d 262, 272 (7th Cir. 1983) (stating that "Illinois law is in

---

[5]The *New York Times Co.* Court held that the constitutional provisions protecting free speech and press required a rule that prohibits public officials from recovering damages for defamatory falsehoods relating to their official conduct unless they can prove that the statement was made with "actual malice." *New York Times Co.*, 376 U.S. at 279-80, 11 L. Ed. 2d at 706, 84 S. Ct. at 726.

disarray on the question whether actual malice defeats the privilege of fair summary"); *Gist v. Macon County Sheriff's Department*, 284 Ill. App. 3d 367, 376, 671 N.E.2d 1154 (1996) (noting that *Catalano* appeared "to have caused confusion in the appellate courts as to whether actual malice might still be raised to defeat this privilege"). As a result, the appellate courts have been split over this issue. Compare *Myers v. The Telegraph*, 332 Ill. App. 3d 917, 923-24, 773 N.E.2d 192 (5th Dist. 2002) (finding that *Catalano* adopted section 611 of the Restatement (Second) of Torts and that actual malice does not defeat a claim of privilege under that section); *Hurst v. Capital Cities Media, Inc.*, 323 Ill. App. 3d 812, 817-18, 754 N.E.2d 429 (5th Dist. 2001) (finding that *Catalano* adopted the Restatement (Second) of Torts and that actual malice does not defeat the fair report privilege); *Tepper*, 308 Ill. App. 3d at 718 (2nd Dist.) (finding that *Catalano* adopted section 611 of the Restatement (Second) of Torts and that malice does not defeat the privilege set forth in that section); *Gist*, 284 Ill. App. 3d at 375 (4th Dist.) (finding that *Catalano* modified the privilege in accordance with the Restatement (Second) of Torts and that malice does not defeat the privilege); with *Lykowski v. Bergman*, 299 Ill. App. 3d 157, 166, 700 N.E.2d 1064 (1st Dist. 1998) (stating that the fair report of judicial proceedings privilege is limited to situations in which the statements are not made solely for the purpose of causing harm to the defamed person and that "section 2—619 relief is properly granted on the basis of qualified privilege *** only when there are no allegations of actual malice made by the plaintiff"); *Rosner v. Field Enterprises, Inc.*, 205 Ill. App. 3d 769, 791, 564 N.E.2d 131 (1st Dist. 1990) (noting that the privilege to report on judicial proceedings is lost upon proof of actual malice); *Tunney v. American Broadcasting Co.*, 109 Ill. App. 3d 769, 775, 441 N.E.2d 86 (1st Dist. 1982) (noting that *Catalano* referred to what the Restatement (Second) of Torts now states, but that the privilege recognized in *Lulay* still retains its validity, and citing *Catalano* for the proposition that the privilege can be lost upon a showing of actual malice); *Newell*, 91 Ill. App. 3d at 744 (1st Dist.) (stating that "a communication reporting the contents of a judicial proceeding is privileged, although it contains defamatory statements, if it is (a) accurate and complete as a fair summary of such proceedings, and (b) not made solely for the purpose of causing harm to the person defamed"). See also *Emery v. Kimball Hill, Inc.*, 112 Ill. App. 3d 109, 112, 114, 445 N.E.2d 59 (2nd Dist. 1983) (stating that a communication reporting the contents of a judicial proceeding is privileged if it is "not made solely for the purpose of causing harm to the person defamed," and noting that the plaintiff had, in fact, alleged malice in the complaint, but nonetheless holding that the complaint still failed

as a matter of law because the communication "was a true reflection of a judicial and public record").

### Whether Actual Malice Defeats the Fair Report Privilege

■ An examination of the *Catalano* decision reveals that it is ultimately unclear as to whether the supreme court chose to adopt section 611 of the Restatement (Second) of Torts because the court never expressly so stated. However, regardless of whether our supreme court adopted the Restatement (Second) of Torts' approach, we read *Catalano* as holding that allegations of actual malice defeat the privilege set forth in section 611, *i.e.*, the fair report privilege. Our conclusion is premised on the fact that the *Catalano* court expressly stated that it was addressing "whether the newspaper article *** was privileged as a report of governmental proceedings" and acknowledged the rule originally expressed in the Restatement of Torts, and later set forth in *Lulay*, that allegations of actual malice defeat a claim of privilege. *Catalano*, 83 Ill. 2d at 167. The *Catalano* court then stated that comment *a* to section 611 of the Restatement (Second) of Torts states that "the privilege is lost if the report is not accurate, but the plaintiffs raise no question on that score." *Catalano*, 83 Ill. 2d at 168. The court then noted that it did not need to address any other "points" raised by the plaintiffs regarding the inapplicability of the fair report privilege to the defendants, *i.e*, that the privilege did not apply because the reporter did not attend the meeting where the allegedly defamatory statement was made, the report was not published until five months after the meeting and allegedly defamatory statement had been made, etc., because it "[was holding] that actual malice on the part of these defendants has not been shown." *Catalano*, 83 Ill. 2d at 168. Thus, we read *Catalano* as requiring allegations of inaccuracy or malice before the fair report privilege can be defeated.

In finding that Illinois law still allows allegations of actual malice to defeat the fair report privilege, we join the line of cases handed down from the First District, as set forth above, which have so found. We also note that, as stated above, Illinois has adopted the minority view that allows the fair report privilege to attach to a complaint before any judicial action has taken place, and we believe that our finding that allegations of actual malice defeat the fair report privilege will aid in preventing schemes in which a person files a complaint solely for the purpose of establishing a privilege to publish its content and then immediately drops the action, which is a concern set forth in the Restatement (Second) of Torts. Restatement (Second) of Torts § 611, Comment *e*, at 300 (1977).

### Whether Defendants Pleaded Actual Malice

■ Applying our finding to the instant case, we must determine

whether plaintiffs here sufficiently pleaded facts to establish actual malice. In order to allege actual malice, a plaintiff must plead "that the statement was made with knowledge of its falsity or in reckless disregard of whether it was false or true." *Colson v. Stieg*, 89 Ill. 2d 205, 214, 433 N.E.2d 246 (1982). Here, plaintiffs alleged, in paragraph 18 of their amended complaint, that "[d]efendants published the false statements with knowledge of the truth, in reckless disregard for the truth, and in possession of facts that should have led defendants to doubt the false statements." Thus, we find that plaintiffs adequately pleaded actual malice. See *Krueger v. Lewis*, 342 Ill. App. 3d 467, 473, 794 N.E.2d 970 (2003) (actual malice was sufficiently alleged where the complaint stated that the statements were made by the defendant "in full knowledge that they were untrue or in reckless disregard of their truth or falsity"). Accordingly, we conclude that the trial court erred in finding that the title "Conspiracy of a Shakedown" did not support a claim for defamation under Illinois law because plaintiffs' allegations of actual malice defeated defendants' claim of the fair report privilege as a basis for dismissing plaintiffs' defamation count.

### Whether Defendants Can Claim the Privilege

■ Plaintiffs contend in their reply brief before this court that defendants cannot claim the fair report privilege case because (1) they were "actively assisting Rockwell" and (2) defendants' reporting "carried a greater sting than Rockwell's civil complaint." We need not address this issue for two reasons. First, plaintiffs have waived their argument that defendants cannot claim the fair report privilege because they improperly raised it for the first time in their reply brief. *Todt v. Ameritech Corp.*, 327 Ill. App. 3d 359, 369, 763 N.E.2d 389 (2002) (arguments raised for the first time in a reply brief will not be addressed by the appellate court). Second, our above holding that Illinois law still adheres to the proposition that allegations of actual malice defeat the fair report privilege dispels the issue of whether defendants can claim the privilege because, even if defendants were able to claim the privilege, plaintiffs' allegations of malice defeat that privilege.

### CONCLUSION

For the reasons stated, we reverse the judgment of the circuit court of Cook County dismissing plaintiffs' count for defamation with prejudice, affirm the dismissal of plaintiffs' count for tortious interfer-

ence with prospective economic advantage, and remand the cause for proceedings consistent with this opinion.

Affirmed in part and reversed in part; cause remanded.

WOLFSON, J., concurs.

JUSTICE CAHILL, specially concurring:

I concur with the disposition of this case, but I disagree with the majority's application of the fair reporting privilege to Start Magazine's January 2003 article headline "Conspiracy of a Shakedown." There is nothing in the text of the headline that would leave the reader with an impression that the underlying article reports on a complaint alleging unfair business practices and conspiracy. Without reference to the official proceeding, the reader is left with only one conclusion: plaintiffs entered into an illegal conspiracy. The point is made by comment $f$ to section 611 of the Restatement (Second) of Torts. Comment $f$ reads:

> "Not only must the report be accurate, but it must be fair. \*\*\* [A]lthough it is unnecessary that the report be exhaustive and complete, it is necessary that nothing be omitted or misplaced in such a manner as to convey an erroneous impression to those who hear or read it, as for example \*\*\* *the use of a defamatory headline in a newspaper report, qualification of which is found only in the text of the article*." (Emphasis added.) Restatement (Second) of Torts § 611, Comment $f$, at 300-01 (1977).

The headline in this case is known as a "catcher" or "eye-stopper" in the media trade. Though sometimes misleading, such headlines carry the reputational weight, for whatever it is worth, of the media outlet. That is why the headline in this case, if run in a newspaper or magazine with no axe to grind, would have read "Conspiracy of a Shakedown, Complaint Alleges." It is of little solace to plaintiffs that their names are not identified in the headline or that the reader later learns that the allegation comes from a privileged legal document. The reputation of the media source is bound to the "eye-stopper."

To the extent the majority finds that the "Conspiracy of a Shakedown" headline is the type of reporting that section 611 of the Restatement protects, I respectfully disagree. I would have reversed the trial court's finding that the headline is privileged under section 611 of the Restatement. I see no reason in this case to decide whether actual malice defeats the fair reporting privilege.